UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-24766-Civ-WILLIAMS/TORRES

JANE DOE,

    Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'
CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for partial summary judgment filed by Jane Doe ("Doe") and Carnival Corporation d/b/a Carnival Cruise Line ("Carnival"). [D.E. 92, 94]. Doe's motion seeks judgment against Carnival on Count V, false imprisonment by its crewmember, Freddy Anggara. Carnival's motion seeks judgment in its favor on Count III, negligent infliction of emotional distress ("NIED").[1] Doe filed her response to Carnival's motion on March 23, 2021 [D.E. 102] to which Carnival replied on March 30, 2021 [D.E. 105]. Carnival filed its response to Doe's motion on April 1, 2021 [D.E. 112] to which she replied on April 8, 2021 [D.E. 114]. Therefore, the motions are now ripe for

---

[1]    Carnival's motion also sought judgment in its favor for Count V but Carnival withdrew its motion as to that claim on March 12, 2021. [D.E. 98].

1

disposition.² After careful consideration of the motions, responses, replies, relevant authority, and for the reasons discussed below, Doe's motion should be **GRANTED** and Carnival's motion should be **GRANTED**.

## I. *FACTUAL BACKGROUND*

Doe was a passenger onboard Carnival's vessel, *Miracle*, and in the early hours of December 2, 2018, she alleges that Fredy Angarra, a Carnival crewmember, raped her in a storage closet. During the prior evening, Doe and her cabinmate, Amanda, ate dinner next to two other passengers, James and John. After dinner, the four of them went to a comedy show and then had a drink in James' and John's cabin. Amanda then decided that her and Doe should go back to their cabin, and James attempted to walk them back. While walking back, however, Doe kept running around and hiding from them close to the pool on the ship's open deck. At some point, Doe slipped and hit her head. After about 20 minutes, Amanda and James eventually gave up on escorting Doe back to her cabin.

Doe then ended up in a storage closet located on the open deck where she and Mr. Anggara engaged in sexual relations. Doe does not recall going in or out of the closet, but Mr. Anggara was holding her hand as they entered. Doe believed that Mr. Angarra was keeping the door to the closet locked and that he would not let her leave until she bent over a cone for him. During the encounter, Doe asked Mr. Anggara questions about his family to calm the situation as she felt scared. Carnival asserts

---

² The Honorable Kathleen M. Williams referred the motions to the Undersigned for disposition on March 30, 2021. [D.E. 108].

2

that she consented to the entire interaction and was free to leave the closet at any time based on a report prepared by the FBI. Regardless, per Carnival's internal policy, even if Doe was not too intoxicated to consent to Mr. Angarra's actions, he was obligated to decline and not engage with her in the storage closet.

After the sexual encounter was over, Doe returned to her cabin and told Amanda what happened while crying. They then reported the incident to guest services at 3:05 a.m. Doe had a panic attack, fell on the floor, and was suicidal. On November 18, 2019, Doe filed a five count complaint against Carnival for (1) negligent hiring and training; (2) negligent procedures and operations; (3) NIED; (4) intentional infliction of emotional distress; (5) false imprisonment; and (6) sexual assault.

## II.   LEGAL STANDARD

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *See Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, a court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is

genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. ANALYSIS

#### A. *False Imprisonment (Count V)*

Doe's motion seeks judgment against Carnival, under vicarious liability, for Mr. Angarra's alleged false imprisonment of Doe. In Florida,[3] the tort of false imprisonment is defined as "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Escambia County School Board v. Bragg,* 680 So. 2d 571, 572 (Fla. 1st DCA 1996) (quoting *Johnson v. Weiner,* 155 Fla. 169, 19 So. 2d 699, 700 (1944)); *see also Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006).

The parties agree that Doe does not remember how she entered or left the storage closet. Doe, however, asserts that she was held against her will once she was in the storage closet. She thought the only way to be let free by Mr. Angarra was to bend over for him. This evidence is supported by Doe's sworn deposition in which she

---

[3] Some courts apply Florida law in this situation. *See Skokan v. Royal Caribbean Cruises, Ltd.*, 2018 WL 5044603, at *5 (S.D. Fla. Oct. 17, 2018) (applying Florida law for a claim of false imprisonment against cruise ship). Though some courts have instead applied the Restatement of Torts. *See Barnes v. Carnival Corp.*, 2007 WL 9702151, at *2 (S.D. Fla. Apr. 12, 2007) ("Both parties agree that, because Plaintiffs' false imprisonment claim does not arise under traditional maritime law, common law principles, as described by the Restatement (Second) of Torts, apply."). Regardless of the law applied, Doe has satisfied the elements of either false imprisonment claim.

has first-hand knowledge of the incident. This evidence alone supports her false imprisonment claim.

On the other hand, Carnival contends that the issue remains a 'he said she said' story that cannot be adjudicated at this stage of litigation because the FBI report shows that Doe was free to leave the closet at any time. Carnival concedes that it does not have any sworn testimony, in any form, from Mr. Angarra. Nor is he available at trial for either party. As a result, Doe argues Mr. Angarra's unsworn version of the events inside the closet cannot create an issue of fact sufficient to rebut Doe's sworn testimony. And to the extent he provided statements to an FBI agent who conducted a criminal investigation after the incident, which are memorialized in an FBI report, they are unsworn inadmissible hearsay. If Doe is correct, Doe's side of the story is all that we have and a ruling in favor of Doe on the false imprisonment claim is proper as there would be no genuine dispute of material fact.

The general rule is that inadmissible hearsay "'cannot be considered on a motion for summary judgment.'" *Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (citing *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Rule 56(e) of the Federal Rules of Civil Procedure requires that "affidavits" that support or oppose summary judgment motions "must be made on personal knowledge, [and] set out facts that would be *admissible* in evidence . . . ." Fed. R. Civ. P. 56(e) (emphasis added). As such, Carnival "cannot use inadmissible hearsay to defeat summary judgment when that hearsay will not be reducible to admissible form at trial."

6

*Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996) (citing *McMillian v. Johnson*, 88 F.3d 1573 (11th Cir. 1996)).

Here, Carnival is relying on statements Mr. Angarra made to the FBI during its investigation. On their face, these statements are clearly hearsay under the Federal Rules of Evidence. *See United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 506 (5th Cir. 2008) (finding that an affidavit from a Federal Agent was inadmissible hearsay on a motion for summary judgment because the agent was not present when the incident occurred). The statements are relied upon by Carnival for the truth of the matter asserted (that Doe's continued presence in the closet was entirely consensual and not against her will). And even if other Carnival employees also heard the statement, or if the FBI report is itself admissible, Mr. Angarra's denials are still classic hearsay. *See, e.g., Zaben v. Air Prod. & Chemicals, Inc.,* 129 F.3d 1453, 1456 (11th Cir. 1997) ("Under the Federal Rules of Evidence, '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). As a general rule, '[h]earsay is not admissible except as provided by these rules. . . . ' Fed. R. Evid. 802.").

There are two levels of hearsay here that must be analyzed. The first is the FBI report itself. That document is an out-of-court statement being admitted for the truth of the matter. It is hearsay. The recognized exception that would apply to the report is the public records exception given the FBI agent's duty to memorialize the investigation. But it is well established in our circuit that the FBI report is not

7

admissible for anything other than the agent's own statements or observations, as opposed to third party statements like this one. *See United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1278 (11th Cir. 2009) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not. . . . In other words, '[p]lacing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statements admissible.'") (company president's statements in police report deemed inadmissible hearsay even if report admissible as no exception applied and statements were not deemed party admissions) (citations omitted). So even if Carnival persuaded us that Mr. Angarra's statements could have been admissible in other ways, this FBI report may not do the trick.

But even if the FBI report could be admitted at all, Mr. Angarra's hearsay statements would clearly have to be excluded under the second level of hearsay review. His denials and his version of what transpired inside that closet are hearsay (statements to the FBI agent given for the truth of the matter). So these statements can only be admitted *by Carnival* if some exception to the hearsay rule applies.[4] But

---

[4] We emphasize this point because Carnival is the proponent of the out-of-court statement here. Arguably, had Doe tried to introduce the statement she could claim it would be admissible as an admission of a party opponent. But even that would be questionable under these circumstances because arguably Mr. Angarra's responses to the FBI agent do not fall within the scope of his regular duties for Carnival. *See, e.g., Zaben,* 129 F.3d at 1457 ("[Non-supervisory employees'] statements to [plaintiff] are hearsay because they were not made within the scope of their authority at the company.") (even plaintiff could not rely on a defendant's employees' statements for the truth of the matter when requirements of exception not fully satisfied).

8

Carnival fails to make any persuasive argument how any relevant exception applies, which was clearly Carnival's burden in its response. Carnival's silence on this point is telling and understandable because potential exceptions do not apply (e.g., the statements were not against his interest, not immediately given, and the excitement of the event had lapsed by several hours). *Compare Navarette v. California*, 572 U.S. 393, 399 (2014) (noting that the present sense impression exception typically applies during real time 911 calls or at least to second call that took place minutes later), *with United States v. Cain,* 587 F.2d 678, 681 (5th Cir. 1979) (hearsay exception for present sense impression did not apply where delay of 15 to 45 minutes elapsed before reporting of an incident).

Ultimately, these hearsay statements cannot be admitted for the same underlying reason that witness statements found in all types of investigative reports are usually excluded: no exception allows witnesses' statements to be admitted at trial merely through the introduction of an investigator's report or memoranda. *See, e.g., Hines v. Brandon Steel Decks, Inc.,* 886 F.2d 299, 303 (11th Cir. 1989) (questioning admissibility of OSHA report at retrial based on reliance on hearsay evidence) (citing *Denny v. Hutchinson Sales Corp.,* 649 F.2d 816, 821-22 (10th Cir. 1981) (Civil Rights Commission's findings on discrimination properly excluded where ex parte investigation lacked formal procedures such as opportunity to cross-examine witnesses); *McKinnon v. Skil Corp.,* 638 F.2d 270, 278 (1st Cir. 1981) (Consumer Product Safety Commission Reports properly excluded as untrustworthy where they contained double hearsay on issues of defect, causation, and negligent design); *Miller*

9

*v. Caterpillar Tractor Co.,* 697 F.2d 141, 144 (6th Cir. 1983) (report excluded because relied upon hearsay statements of witnesses interviewed by investigator); *see also Vitek Sys., Inc. v. Abbott Labs.,* 675 F.2d 190, 194 (8th Cir. 1982) (employee's recollection of consumer encounters, memorialized in memorandum, were hearsay and did not qualify as present sense impression because company sought to elicit its employee's evaluation of the customer's thought process).

Now that the hearsay statements from the FBI report must be excluded, we are left with nothing tangible to find a genuine issue of fact remains for trial. "Generally, evidence inadmissible at trial may not be considered on a motion for summary judgment." *Ekokotu v. Federal Exp. Corp.,* 408 F. App'x 331, 335 (11th Cir. 2011) (citing *Corwin v. Walt Disney World Co.,* 475 F.3d 1239, 1249 (11th Cir. 2007)). There is no evidence that the jury could rely on to reject Doe's undisputed recollection that at some point inside the closet Mr. Angarra did not let her exit the closet after she sought to do so. For that period of time, Plaintiff's claim for false imprisonment has been established as a matter of law.

Having said that, however, this affirmative finding based on this motion does not dispose of the entire claim. Any affirmative defenses that Carnival raised to this claim may still have to be adjudicated by the trier of fact, and at least the amount of damages that Carnival is liable for is also subject to jury determination. Carnival is only limited from challenging its prima facie vicarious liability for the period of false imprisonment that Doe was intentionally subjected to by Carnival's employee. Summary judgment as to that finding in Count V should be **GRANTED**.

### B. <u>NIED (Count III)</u>

Carnival's motion seeks judgment in its favor on Doe's NIED claim because no one else besides Doe was in the zone of danger. Doe does not dispute this but argues that the actual victim of a physical injury, Doe here, can bring a NIED claim. There are three predominant tests for a NIED claim: (1) the physical impact test, (2) the zone of danger test, and (3) the relative bystander test. *See Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 546-49 (1994). "Admiralty law allows recovery only for those passing the zone of danger test." *Terry v. Carnival Corp.*, 3 F. Supp. 3d 1363, 1369 (S.D. Fla. 2014) (citing *Smith v. Carnival Corp.,* 584 F. Supp. 2d 1343, 1353-54 (S.D. Fla. 2008)). A NIED claim, requires "'mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and t*hat is not directly brought about by a physical injury*, but that may manifest itself in physical symptoms.'" *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337-38 (11th Cir. 2012) (emphasis added) (determining that bystanders' NIED claims should survive a motion to dismiss as they experienced various physical manifestations of their emotional distress from what they witnessed) (quoting *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 544 (1994)).

For example, in *DW by & through CW v. Carnival Corp.*, the plaintiff "was on a Carnival cruise ship asleep in his cabin when—due to a malfunction with his cabin door—an intoxicated male teenager gained entry to his cabin, got into his bed, and 'cuddled' him before falling asleep." 2018 WL 7822329, at *1 (S.D. Fla. June 19, 2018). Due to this unwanted interaction and a subsequent medical exam on the ship, the

plaintiff filed a NIED claim against Carnival. Judge Kathleen Williams rejected the NIED claim on Carnival's motion for summary judgment because "NIED claims are appropriate only where the physical injury is suffered by someone other than the Plaintiff." *Id.*, at *14 (citing *Terry*, 3 F. Supp. 3d at 1369). And in that case, the plaintiff's pain and suffering "endured as a direct result of two separate *physical injuries that he allegedly suffered*: injuries stemming from an assault and battery and from an invasive medical examination." *Id.* (emphasis in original).

Because Doe fails to rebut controlling Eleventh Circuit precedent[5] and it is undisputed that only Doe directly suffered the physical injuries, Carnival's motion for summary judgment in its favor on Count III should be **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, we **RECOMMEND** that Doe's motion for partial summary judgment [D.E. 92] for Count V as to prima facie liability should be **GRANTED**, and Carnival's motion for partial summary judgment [D.E. 94] for Count III in its entirety should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Judge Kathleen M. Williams. The Court finds good cause to expedite any objections given the imminent trial date as well as the limited caselaw identified by the parties on the issues presented. Failure

---

[5] Doe cites to the controlling Eleventh Circuit case on the issue, *Chapparo*, to support her argument, but this case clearly supports Carnival's argument. The Florida case she cites to is not applicable; *Chapparo* is.

to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Social Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 25th day of June, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge