**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
Miami Division

**CASE NO.:   19-cv-24766-CIV-WILLIAMS/TORRES**

JANE DOE,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

                                  /

## DEFENDANT CARNIVAL CORPORATION'S MOTION FOR NEW TRIAL

MASE SEITZ, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone:  (305) 377-3770
Facsimile: (305) 377-0080

By:____*/s/ Curtis Mase*_____
      CURTIS J. MASE
      Florida Bar No. 478083
      cmase@maselaw.com
      WILLIAM R. SEITZ
      Florida Bar No. 73928
      wseitz@maselaw.com

Dated:  December 19, 2022

# TABLE OF CONTENTS

<b>Page</b>

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND .................................................................................................3

LEGAL STANDARD...........................................................................................................8

ARGUMENT .....................................................................................................................9

I.    THIS COURT COMMITTED LEGAL ERROR WHEN IT FAILED TO RECONSIDER ITS GRANT OF SUMMARY JUDGMENT ON FALSE IMPRISONMENT AFTER IDENTIFYING A MATERIAL FACTUAL DISPUTE..................................................................................10

    A.    The FBI Notes Created a Dispute of Material Fact ....................................... 11

    B.    Maintaining the Summary Judgment Caused Carnival Substantial Prejudice........................................................................ 12

    C.    Summary Judgment Was Also Improper Where the Dispute of Fact Over Plaintiff's Credibility Further Deepened at Trial .......................... 16

II.    EXCLUDING THE FBI REPORTS AT TRIAL WAS ERROR .............................. 17

    A.    The Court Abused Its Discretion by Excluding the FBI Reports, Even for the Limited Purposes of Impeaching Plaintiff's Experts, after the Experts Relied on Them in Forming Their Opinions ...................................................................... 18

    B.    The FBI Reports' Investigative Conclusions, at a Minimum, Were Admissible Under Federal Rule of Evidence 803(8) .......................... 21

III.    DENIAL OF A MITIGATION INSTRUCTION WAS ERROR.............................. 25

CONCLUSION....................................................................................................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*,
  37 F.3d 1460 (11th Cir. 1994) ........................................................................9, 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).......................................................................................16

*Blanton v. Univ. of Fla. ex rel. Bd. of Trs. of Univ. of Fla.*,
  273 F. App'x 797 (11th Cir. 2008) ............................................................21, 22, 24

*Brink v. Direct Gen. Ins. Co.*,
  38 F.4th 917 (11th Cir. 2022) ..........................................................................27

*Castle v. Sangamo Weston, Inc.*,
  837 F.2d 1550 (11th Cir. 1988) ........................................................................13

*Chapman v. AI Transport*,
  229 F.3d 1012 (11th Cir. 2000) (en banc) .............................................................16

*Christopher v. Florida*,
  449 F.3d 1360 (11th Cir. 2006) ..........................................................................9

*Crawford v. ITW Food Equip. Grp., LLC*,
  977 F.3d 1331 (11th Cir. 2020) ........................................................................21

*Doe v. Sch. Bd. of Miami-Dade Cnty., Fla.*,
  No. 19-24048-CIV, 2022 WL 3973881 (S.D. Fla. Aug. 31, 2022) .........................................14

*Dolsak v. Comm'r of Soc. Sec.*,
  724 F. App'x 914 (11th Cir. 2018) .....................................................................25

*Elms v. Crowley Marine Serv., Inc.*,
  No. C95-363Z, 1996 WL 881928 (W.D. Wash. Sept. 16, 1996) ..........................................26

*Escambia Cnty. Sch. Bd. v. Bragg*,
  680 So. 2d 571 (Fla. 1st DCA 1996) ...................................................................14

*Finnerty v. Stiefel Lab'ys, Inc.*,
  756 F.3d 1310 (11th Cir. 2014) ........................................................................27

*Fried v. Stiefel Lab'ys, Inc.*,
  814 F.3d 1288 (11th Cir. 2016) ........................................................................27

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Goodloe v. Royal Caribbean Cruises, Ltd.*,
    418 F. Supp. 3d 1112 (S.D. Fla. 2019) ...................................................9

*Good Luck Nursing Home, Inc. v. Harris*,
    636 F.2d 572 (D.C. Cir. 1980) ...........................................................11

*Goodman v. Kimbrough*,
    718 F.3d 1325 (11th Cir. 2013) .........................................................21

*Gray v. Estelle*,
    574 F.2d 209 (5th Cir. 1978) ............................................................11

*Guzman v. Boeing*,
    366 F. Supp. 3d 219 (D. Mass. 2019) ...............................................26

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
    No. 3:19md2885, 2021 WL 848074 (N.D. Fla. Mar. 7, 2021) .............22

*In re Louisiana Crawfish Producers*,
    852 F.3d 456 (5th Cir. 2017) ............................................................11

*Ins. Co. of N. Am. v. Valente*,
    933 F.2d 921 (11th Cir. 1991) ...........................................................9

*Jackson v. State of Alabama State Tenure Comm'n*,
    405 F.3d 1276 (11th Cir. 2005) .........................................................11

*Miller v. Field*,
    35 F.3d 1088 (6th Cir. 1994) .......................................................21, 22

*Mitchell v. Ford Motor Co.*,
    318 F. App'x 821 (11th Cir. 2009) .....................................................18

*Montgomery Ward & Co. v. Duncan*,
    311 U.S. 243 (1940).............................................................................9

*Peat, Inc. v. Vanguard Rsch., Inc.*,
    378 F.3d 1154 (11th Cir. 2004) ...........................................................9

*Rubinstein v. Yehuda*,
    38 F.4th 982 (11th Cir. 2022) ...........................................................25

*Sanzone v. Hartford Life & Accident Ins. Co.*,
    519 F. Supp. 2d 1250 (S.D. Fla. 2007) .............................................10

*SEB S.A. v. Sunbeam Corp.*,
    148 F. App'x 774 (11th Cir. 2005) .......................................................9

# TABLE OF AUTHORITIES—Continued

**Page(s)**

*Sec. & Exch. Comm'n v. BankAtlantic Bancorp, Inc.*,
  661 F. App'x 629 (11th Cir. 2016) ........................................................................14

*Shelkofsky v. Broughton*,
  388 F.2d 977 (5th Cir. 1968) ..........................................................................11, 14

*Tippens v. Celotex Corp.*,
  805 F.2d 949 (11th Cir. 1986) ...............................................................................16

*United States v. A&S Council Oil Co.*,
  947 F.2d 1128 (4th Cir. 1991) ...............................................................................19

*United States v. Adams*,
  314 F. App'x 633 (5th Cir. 2009) ...........................................................................18

*United States v. De Peri*,
  778 F.2d 963 (3d Cir.1985)....................................................................................23

*United States v. Floyd*,
  281 F.3d 1346 (11th Cir. 2002) .............................................................................18

*United States v. Gluk*,
  831 F.3d 608 (5th Cir. 2016) .................................................................................24

*United States v. Mackey*,
  117 F.3d 24 (1st Cir. 1997)....................................................................................22

*United States v. Sallins*,
  993 F.2d 344 (3d Cir. 1993)...................................................................................21

*United States v. Singer*,
  963 F.3d 1144 (11th Cir. 2020) .............................................................................27

**RULES:**

Fed. R. Civ. P. 26(a) .................................................................................................18

Fed. R. Civ. P. 26(e) .................................................................................................18

Fed. R. Civ. P. 59(a)(1)............................................................................................10

Fed. R. Civ. P. 59(a)(1)(A) ....................................................................................1, 8

Fed. R. Evid. 37(c)(1) ........................................................................................18, 20

Fed. R. Evid. 703 ..............................................................................................18, 19

## TABLE OF AUTHORITIES—Continued

**Page(s)**

Fed. R. Evid. 705 ...................................................................................................................18

Fed. R. Evid. 803(8)...........................................................................................................21, 23

Defendant, Carnival Corporation, by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), hereby moves this Court to set aside the jury verdict returned in this action [ECF No. 307] and to grant a new trial. The judgment has not yet been entered.

## INTRODUCTION

This is a maritime sexual assault case. Such cases are always volatile, and this Court conducted the preliminary proceedings and trial with appropriate care. But several critical developments before and at trial deprived Carnival of an opportunity to present its defense free of prejudice. Ahead of trial, Plaintiff was granted summary judgment on her false-imprisonment claim against Carnival. Essential to that decision was the Court's conclusion that there was "no evidence that the jury could rely on to reject [Plaintiff's] undisputed recollection that . . . Mr. Angarra did not let her exit the closet after she sought to do so." [ECF No. 151 at 10].

But there was such evidence: The FBI's contemporaneous notes and resulting reports documented the Bureau's investigation into the incident and its ultimate conclusion that the encounter was consensual. Plaintiff opposed the admission of the FBI evidence as hearsay at the summary judgment stage. The Court agreed and excluded the FBI Notes and Reports from consideration, leading to the grant of summary judgment for Plaintiff on her false-imprisonment claim.

With the summary judgment decision in hand, Plaintiff then made a pretrial about-face, deciding she now *wanted* to use the FBI Notes in her favor. So Plaintiff stipulated to the admission of the FBI Notes—which, as this Court noted at the time, created a clear dispute of material fact. After all, consent was a central issue at trial and in Plaintiff's sexual assault claim, and the FBI Notes reflected the investigators' conclusion that the encounter at issue was consensual. Carnival

1

thus renewed its motion for reconsideration of the summary judgment against it on Plaintiff's false imprisonment claim. But reconsideration was denied, on the ground that reconsidering summary judgment at that later stage would unduly prejudice the Plaintiff. The jury considering Plaintiff's remaining claim thus was told that Plaintiff had been held in the closet without her consent. No surprise, then, when the jury took the only logical conclusion from that directive and found for Plaintiff on the consent element of sexual assault as well.

Even aside from Plaintiff's whipsaw with the FBI Notes, the exclusion of the other FBI materials independently warrants post-trial review. Ahead of trial this Court excluded the FBI Reports as inadmissible hearsay in their entirety, without considering, at a minimum, whether the investigative conclusions in those reports could be admitted. That is substantial prejudicial error warranting a new trial, because the conclusions (at the least) are admissible under the public records hearsay exception.

The exclusion of the FBI Reports had other consequences as well. At trial, Plaintiff put forward two expert witnesses. Unbeknownst to Carnival until mid-cross-examination, one of those experts had *relied on the FBI Reports* in forming her opinion. Yet because no mention of the Reports' conclusions was permitted—including the FBI's conclusion that the interaction was consensual—Carnival could not use the FBI Reports to impeach the testifying expert. In fact, that expert was even allowed to copy factual statements from the FBI Reports into her own expert report, testify to those facts, conclude in her expert opinion that (contrary to the FBI's conclusion) the interaction was *not* consensual, yet all the while avoiding cross-examination and impeachment. Plaintiff thus benefitted from the rules of evidence, which allow experts to rely on otherwise inadmissible evidence, but shirked the corresponding burden of those rules, which require the

expert disclose and be cross-examined on that evidence.  The Court should not reward such blatant gamesmanship.

Finally, Carnival sought a jury instruction on Plaintiff's failure to obtain recommended care to mitigate her psychological damages.  This was supported by the medical records and the testimony of Plaintiff and her own expert, Dr. Surloff.  The Court concluded that mitigation was not applicable to psychological damages.  That conclusion was not correct; all types of personal injury damages are subject to mitigation.  Because it was not informed about Plaintiff's duty to mitigate, the jury could not properly consider the effect of not obtaining recommended care on Plaintiff's damages.

In light of Plaintiff's trial presentation, the blanket exclusion of the FBI Reports and conclusions therein, and the missing mitigation instruction, Carnival was deprived of a fair trial.  A new trial is warranted.

## FACTUAL BACKGROUND

This is a maritime sexual assault case.  Plaintiff alleges that, while playing "hide and seek" while "blackout drunk," Fredy Anggara, a crewmember aboard the Carnival *Miracle*, confined her in a storage closet without her consent and sexually assaulted her.  [ECF No. 95-1, at 100:2–5, 104:25, 120:13–21, 122:8–12, 124:5–12].  Plaintiff's claims stem from that occurrence.

The alleged incident prompted the FBI to conduct an onboard fact-finding investigation in early December 2018.  [ECF Nos. 111-2, 111-4]; [Trial Tr. Day 6 at 27:4–8].  Among other actions in support of that investigation, FBI investigators conducted in-person interviews of several witnesses and relevant individuals, including Plaintiff, Anggara, Plaintiff's cabinmate, and the vessel's Chief Security Officer.  [ECF No. 111-2]; [Trial Tr. Day 6 at 30:13–19, 32:18–22, 33:7–8, 45:10–11].  The final report resulting from the FBI's investigation concluded that "the sexual

encounter was consensual at the time of the event." [ECF No. 111-4]. The FBI referred the results of its investigation and its conclusion to the United States Attorney's Office for the Middle District of Florida, which declined to prosecute Anggara. [ECF No. 111-2].

The FBI's investigation was memorialized in three records: (1) Investigation into alleged sexual misconduct aboard Carnival Cruise Ship "Miracle," (2) Liaison with Carnival Cruise Ship Miracle Security Officer Vikram Singh; and (3) Case Closing Report (collectively, the "FBI Reports"), which Plaintiff produced in discovery. [ECF Nos. 111-2, 111-4]. In addition, throughout the FBI's investigation, Special Agent Sarah Andreasen ("Special Agent Andreasen") took handwritten notes of her interviews with witnesses and her investigative findings (the "FBI Notes"). [J.E. 26]. The FBI Notes, which were admitted at trial, state that Plaintiff was drinking heavily on the date of the alleged incident, ran from her traveling companion, and ended up in a closet with a man. [J.E. 26-1]. The FBI Notes state, among other things, "She was being playful before that point and may have asked for help hiding" and that Plaintiff "doesn't remember if she gave consent." [J.E. 26-3]. The FBI Notes reflect the outcome of Special Agent Andreasen's interview of Anggara, including that Anggara saw Plaintiff running on the deck and she followed him into the locker, and that while inside the closet, Plaintiff held his hand, hugged him, and masturbated him. [J.E. 26-6–8]. According to the FBI Notes, Anggara stated that, as Plaintiff and Anggara exited the closet, Plaintiff "pulled his hand and kissed him in front of the camera. She said[,] 'thank you for everything.'" [J.E. 26-9].

In November 2019, nearly a year after the incident, Plaintiff filed suit against Carnival, alleging false imprisonment, negligence, and sexual assault. [ECF No. 1]. Following discovery, the parties filed cross-motions for partial summary judgment, with Plaintiff seeking partial summary judgment on her false-imprisonment claim. [ECF Nos. 92, 94]. Magistrate Judge Torres

issued a Report and Recommendation ("R&R") on the parties' cross-motions in June 2021, in which he recommended the Court enter partial summary judgment in Plaintiff's favor on her false imprisonment claim. [ECF No. 151]. The R&R determined the FBI Reports (which the R&R frequently referred to as a singular "report") were inadmissible hearsay in their entirety, and thus unavailable for consideration at summary judgment. [ECF No. 151 at 7–9]. And as the R&R explained, "Now that the hearsay statements from the FBI report must be excluded, we are left with nothing tangible to find a genuine issue of fact remains for trial" on the false-imprisonment claim. [*Id*. at 10]. The Court denied Carnival's objections to the R&R and granted partial summary judgment in Plaintiff's favor on her false-imprisonment claim. [ECF No. 197]. Carnival sought reconsideration, which the Court denied. [ECF No. 249].

Several critical developments then occurred at trial.

First, at the motions-in-limine stage, the Court excluded the FBI Reports in their entirety as inadmissible hearsay. It stated that the Reports *generally* were hearsay and, therefore, that everything therein was inadmissible hearsay—even the FBI's conclusion that the interaction was consensual. [ECF No. 233]. But now, with summary judgment in hand, the Plaintiff sought to *admit* some of those FBI documents into the trial record, agreeing to stipulate to the admission of the FBI Notes into evidence. [ECF No. 154 at 3 (J.E. 26)]. Plaintiff's counsel freely admitted that he stipulated to the admission of the FBI Notes for Plaintiff's strategic benefit, explaining that he agreed to make it a joint exhibit, "in reliance that I already have the false imprisonment claim." [Trial Tr. Day 6 at 15:5–7].

This Court recognized what had occurred: The stipulated admission of the Notes into evidence created the very dispute of material fact Plaintiff had previously successfully stifled at the summary judgment stage before Magistrate Judge Torres. As this Court put it, there were now

"two accounts; meaning, there is an issue of fact which was not present when Judge Torres examined it." [*Id*. 18:2–4].

Because there existed a material factual dispute on Plaintiff's false-imprisonment claim, Carnival renewed its motion for reconsideration of the summary judgment order. [ECF No. 296]. The court recognized the conundrum it now faced, observing that it did not "know how much more diametrically opposed in terms of genuine issue of fact you [could] have than [Plaintiff's] account and then [the FBI Notes] account." [Trial Tr. Day 6 at 16:24–17:1].

Yet the Court ultimately denied the motion, and confirmed its prior summary judgment ruling that there *was not* a genuine dispute of fact, on the ground that reconsidering summary judgment would prejudice Plaintiff "at this time" because "we did not substantively visit this issue" until a few days after the Notes came into evidence and Plaintiff had already "designed" her case. [ECF No. 310]; [Trial Tr. Day 6 at 70:3–15].

Second, Plaintiff failed to make numerous expert disclosures and instead blindsided Carnival with them on the eve of, and even during, trial. For one example, Plaintiff waited until trial to reveal for the first time that her expert Dr. Surloff had conducted a battery of previously undisclosed psychological tests upon Plaintiff during her most recent evaluation, which also was unauthorized by the court. [ECF No. 217 at 36:10–37:7]; [Trial Tr. Day 5 at 78:9-81:6].

Dr. Surloff's testimony on cross-examination also revealed—and also for the first time— that she relied upon the excluded FBI Reports in formulating her expert opinion. *See* [Trial Tr. Day 5 at 86:12–91:20]. This too was never disclosed pretrial. Dr. Surloff also failed to bring the FBI Reports with her to trial, despite a standard subpoena requiring her to bring all records she relied on in forming her opinion.

Despite Dr. Surloff's reliance on the FBI Reports—including in many places where she simply "repeated what was written in the [FBI] report," [*Id.* at 87:23-25, 89:8-90:4]—Carnival was neither able nor permitted to ask Dr. Surloff anything about the FBI Reports on cross-examination. Carnival was not able to ask Dr. Surloff about the FBI Reports on cross because Dr. Surloff did not bring the FBI Reports and said she could not recall anything about them:

> "Mr. Mase: What was the source of that information?
>
> Dr. Surloff: That was in the comments that [Mr. Anggara] must have provided to the FBI . . . I just repeated exactly what he said . . . .
>
> Mr Mase: As we sit here right now, you're not able to recall where you got that information; is that correct?
>
> Dr. Surloff: No . . . . I didn't bring all of the information that was sent to me . . . . I summarized it in my report."

[*Id.* at 90:1-15].

And Carnival was not permitted to cross Dr. Surloff on the FBI Reports because they had been excluded as hearsay. Carnival similarly was not able to cross-examine Plaintiff's security expert, Dr. Foster, about the FBI Reports he *also* relied on in his own expert report:

> Mr. Seitz: Mr. Foster has relied upon the FBI records in preparing his opinion. It is in his report.
>
> The Court: Okay. He said so.
>
> . . .
>
> Mr. Seitz: . . . I want to cross-examine the witness—
>
> The Court: No, you're not going to do that, Mr. Seitz. I am not going to allow that.

[Trial Tr. Day 3 at 150:16–151:10].

FBI Special Agent Sara Andreasen, who authored the FBI Reports and Notes, also was not permitted to testify regarding her conclusions based on her investigation. [Trial Tr. Day 6 at 24:14–25].

In addition to the improper constraints placed on Carnival's ability to effectively cross-examine witnesses, Plaintiff's trial testimony re-affirmed the existence of the factual dispute focused on her consent. Plaintiff testified at trial that she did not recall consenting to her encounter with Anggara in the closet aboard the Carnival *Miracle*. [*Id.* at 235:6–8]. But the FBI Report, and portions of the FBI Notes, on which Plaintiff's own experts relied, suggest instead that Plaintiff while playing drunken "hide and seek" had asked Anggara to enter the storage room, close the door, and stay with her, [J.E. 26 at 6], and conclude the interaction was consensual. [ECF No. 111-4]. Carnival was not allowed to leverage that evidence either to rebut Plaintiff's narrative or impeach her experts.

When the case went to the jury, the jury was told that Anggara had already been found to have falsely imprisoned Plaintiff, "defined as the unlawful restraint of a person against their will." [ECF No. 309 at 18]. The jury was further instructed that, for the sexual assault claim, Plaintiff must prove that Anggara knowingly participated in a sexual act with Plaintiff "without Plaintiff's consent." [*Id.* at 14]. Unsurprisingly—given the directed finding that Plaintiff had been restrained "against [her] will"—the jury found that Anggara had sexually assaulted Plaintiff, and it eventually returned a verdict finding Carnival vicariously liable for $10.2 million. [ECF No. 307].

## LEGAL STANDARD

A motion for new trial may be granted "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

> Although a comprehensive list of the grounds for granting a new trial is elusive, the Supreme Court has held that a motion for a new trial may rest on the fact [that] "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury."

*Goodloe v. Royal Caribbean Cruises, Ltd.*, 418 F. Supp. 3d 1112, 1120 (S.D. Fla. 2019) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). "When ruling on a motion for a new trial, a trial judge must determine 'if in his [or her] opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice . . . .'" *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 922–923 (11th Cir. 1991). A new trial is warranted "where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice')." *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004).

To determine whether a new trial is warranted, courts consider the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during trial. *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 790 (11th Cir. 2005) (citing *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1465 (11th Cir. 1994)). This discretionary decision "touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before him." *Christopher v. Florida*, 449 F.3d 1360, 1366 n.4 (11th Cir. 2006).

## ARGUMENT

Several errors before and at trial substantially prejudiced Carnival. First, Plaintiff's stipulated admission of the FBI Notes created—*in the Court's own view*—a genuine dispute of material fact, necessitating reconsideration of the summary judgment on false imprisonment. But

reconsideration was denied and the jury was told that Plaintiff had already received judgment in her favor on her false imprisonment claim—including, of course, the question of consent so critical to her assault claim.  The FBI Reports also were excluded in their entirety as inadmissible hearsay, even though precedent clearly allows, at a minimum, that the investigative conclusions be admitted.  And Carnival was not permitted to cross-examine Plaintiff's expert witnesses on the FBI Reports, even for the limited purpose of impeachment, despite those experts having relied on the FBI Reports in forming their expert opinions.  Finally, the Court declined to give a mitigation jury instruction on Plaintiff's failure to mitigate her personal injury damages.

Taken individually and together, these errors warrant a new trial.[1]

## I.   THIS COURT COMMITTED LEGAL ERROR WHEN IT FAILED TO RECONSIDER ITS GRANT OF SUMMARY JUDGMENT ON FALSE IMPRISONMENT AFTER IDENTIFYING A MATERIAL FACTUAL DISPUTE.

Motions for reconsideration should be granted in three instances: to address (1) a change in controlling law; (2) the availability of new evidence; or (3) a clear error or manifest injustice at trial.  *Sanzone v. Hartford Life & Accident Ins. Co.*, 519 F. Supp. 2d 1250, 1255 (S.D. Fla. 2007). Two of those three grounds are implicated here.  First, Plaintiff introduced new evidence—the FBI Notes—at trial, thoroughly undermining the Court's summary judgment order and creating a dispute of fact.  The Court's denial of the ensuing motion for reconsideration was legal error, given the conceded presence of a material factual dispute.  And the resulting trial outcome was manifestly unjust: The jury was instructed that Plaintiff had already been granted summary judgment on her

---

[1] This Court can "grant a new trial on all or some of the issues" in a case.  Fed. R. Civ. P. 59(a)(1). For purposes of this motion, that authority would allow the court to limit its grant of a new trial to those claims affected by the summary judgment and evidentiary errors bearing on consent:  The false imprisonment and sexual assault claims.  The jury's finding in favor of Carnival on Plaintiff's negligence claim did not turn on whether Plaintiff consented to the interaction.  If the court concludes that the issues and evidence were not sufficiently separate, then it should enter a new trial on all issues.

claim that she was detained without her consent, rendering the jury's verdict inevitable as to her claim that she was touched without her consent.

### A. The FBI Notes Created a Dispute of Material Fact.

When reconsidering summary judgment based on new evidence, courts consider whether "substantially different evidence is produced" at trial than was in the summary judgment record. *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005). That is because when the record changes, "the inferences that may be drawn from it" change as well. *Id*. And the decision to send an issue to the jury must be made "on the basis of the evidence actually admitted and as actually adduced." *Shelkofsky v. Broughton*, 388 F.2d 977, 979 (5th Cir. 1968) (per curiam). Therefore, when the trial record expands to include a "fact so central to the litigation that it shows the initial judgment to have been manifestly unjust," reconsideration is proper. *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (citing *Gray v. Estelle*, 574 F.2d 209, 214-15 (5th Cir. 1978)).

Consider the Fifth Circuit's decision *In re Louisiana Crawfish Producers*, 852 F.3d 456 (5th Cir. 2017). There, the trial court declined to reconsider its summary-judgment ruling after plaintiffs presented new evidence that generated a fact dispute. The Court of Appeals reversed. *Id*. at 459. It also rejected arguments that plaintiffs should have put forward that evidence sooner: The key fact—in that case an admission in a deposition—did not become available until much later. *Id.* at 466–468. When that key fact came in at trial, reconsideration was required to ensure a decision based on "*all* the facts." *Id.* at 468.

The same series of events occurred here. Judge Torres recommended summary judgment on Plaintiff's false-imprisonment claim because there was at the time "no evidence that the jury could rely on to reject [Plaintiff's] undisputed recollection that . . . Mr. Angarra did not let her exit the closet after she sought to do so," and thus no "genuine issue of fact remain[ed] for trial." [ECF

11

151 at 10]. That all changed when Plaintiff stipulated to the admission at trial of the FBI Notes, because the Notes created a critical dispute of fact. The Notes indicate that Plaintiff does not remember whether she gave consent or how she got out of the storage room. [JE 26 at 2–3]. They also indicate that Plaintiff asked Mr. Anggara to enter the storage room, to close the door, and to stay in the room with her. *Id*. at 6. As the Court acknowledged, because of the Notes, the record now contains "two accounts," thereby creating "an issue of fact which was not present when Judge Torres examined it." [Trial Tr. Day 6 at 18:2-4].

At that point, it was clear that Plaintiff's false imprisonment claim should go to the jury. The Court itself noted at trial that summary judgment decisions do not bind the district court for the remaining proceedings. After all, this Court explained, "factual development is still ongoing . . . . Pretrial rulings [are] often based on incomplete information[.] [They] don't bind district judges for the remainder of the case. At the summary judgment stage you're only asked whether there could be a material issue of fact that could be introduced." [*Id*. at 18:11–18]. Quite so. Here, at summary judgment, the magistrate judge found no material issue of fact. At trial, however, there *was* "an issue of fact which was not present when Judge Torres examined it." [*Id*. at 18:2–4]. That tectonic evidentiary shift required reconsideration of the summary judgment decision, and denial of summary judgment.

### B. Maintaining the Summary Judgment Caused Carnival Substantial Prejudice.

This Court declined to reconsider the summary judgment, however. As the Court saw things at the time, reconsideration at that stage "would be prejudicial" because Plaintiff's counsel "ha[d] not designed his case around this issue." *Id*. at 70:3–7, 13–15.

That is not an appropriate basis for denying summary judgment in the face of concededly disputed fact issues. The summary judgment standard asks two related questions: Are there

12

disputed issues of fact, and are those disputed issues material?  That summary judgment standard does not contain a prejudice element, or any other kind of equitable arm; it is a go-, no-go inquiry. If material factual disputes exist—as they concededly did here—no summary judgment is available.  Once Plaintiff put those Notes into evidence and then contradicted them with her own testimony, the jury needed to reckon with them.

And even if "prejudice" to the nonmoving party in the face of material disputed facts was sufficient to warrant a summary judgment, reconsideration of the prior summary judgment would not have prejudiced Plaintiff in any event.  Carnival filed its renewed reconsideration motion a matter of days after Plaintiff stipulated to the admission of the FBI Notes giving rise to the material factual dispute, and immediately after Plaintiff testified contrary to the Notes.[2]  The legal conundrum arising from the Notes' admission was evident:  The Court itself pointed out the material factual dispute the Notes had created.  [*Id*. at 18:2–4].  And the consent element of false imprisonment and the consent element of sexual assault are substantially similar.  Plaintiff testified to the entire series of events.  Because Carnival moved before the close of Plaintiff's case, there was time for Plaintiff to call additional witnesses to clarify any facts necessary to her false imprisonment claim.  *See* [*id*. at 21:8–13].  The Court even suggested as much, stating that putting Plaintiff back on the stand "would address any concern that [Plaintiff] hadn't been able to . . . speak to the issue."  [*Id*. at 16:4–9].  And the jury would not have known of the underlying change.

When a new, material, factual dispute arises, it renders a prior summary judgment improper.  At that point, a court may not prevent the jury from weighing the evidence on the issue in question.  *Castle v. Sangamo Weston, Inc*., 837 F.2d 1550, 1559 (11th Cir. 1988) ("Neither the

---

[2] Carnival renewed its motion for reconsideration as soon as practicable after Plaintiff's testimony. Plaintiff testified on Friday, July 15.  Plaintiff's counsel observes the Sabbath; Carnival respected that religious observation and did not seek to meet and confer until after the Sabbath, on Sunday, July 17.  Carnival then filed its reconsideration motion that same day.  [ECF No. 296].

district courts nor the appellate courts are free to reweigh the evidence and substitute their judgment for that of the jury."). It should instead allow the case to be tried on the evidence "actually admitted." *Shelkofsky*, 388 F.2d at 979. Maintaining the summary judgment in the face of disputed facts effectively precluded Carnival from being able to challenge at trial an element critical to the remaining claim and caused Carnival substantial prejudice. *See Doe v. Sch. Bd. of Miami-Dade Cnty., Fla.*, No. 19-24048-CIV, 2022 WL 3973881, at *2 (S.D. Fla. Aug. 31, 2022) (citing *Ad-Vantage Tel. Directory Consultants, Inc.*, 37 F.3d at 1465).

The Court's failure to reconsider partial summary judgment directed the jury towards a finding of liability from the trial's outset. The initial grant of partial summary judgment prevented Carnival from contesting liability for false imprisonment and prejudiced the jury as to sexual assault. Partial summary judgment is a valuable tool, but one that always risks "unfair prejudice and jury confusion." *Sec. & Exch. Comm'n v. BankAtlantic Bancorp, Inc.*, 661 F. App'x 629, 637 n.6 (11th Cir. 2016). By definition, someone who is forcibly imprisoned did not consent. *See* [ECF No. 151 at 5]; [ECF No. 309 at 18 (jury instruction defining false imprisonment "as the unlawful restraint of a person against their will")]; *see also Escambia Cnty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. 1st DCA 1996) (per curiam) (defining false imprisonment as "the unlawful restraint of a person *against his will*" (emphasis added and citation omitted)). Lack of consent was also a distinct, necessary element of Plaintiff's sexual assault claim. [ECF No. 309 at 14 (jury instruction listing lack of consent as element of the claim)]. Because the Court instructed the jury that Anggara had held Plaintiff against her will, the jury took the only logical path available and found that Plaintiff did not consent to her sexual encounter in the closet, either. Meanwhile, the jury found for Carnival on all other claims—the elements of which, importantly, did not turn on consent.

14

Subsequent trial testimony further crystallized the dispute.  Plaintiff testified that she did not recall several basic facts about her encounter with Anggara, including whether Plaintiff asked Anggara to help her hide from her friend and whether Plaintiff ever tried to leave the closet.  [Trial Tr. Day 5 at 236:25–237:2, 244:8–10].  Nevertheless, Carnival could not use this testimony to rebut liability for false imprisonment and, by extension, lack of consent.  The court's summary judgment decision, in other words, prevented Carnival from making its case.

Plaintiff's change in position compounded the unfairness to Carnival.  Plaintiff's position during the summary judgment phase—that no evidence or conclusions from the FBI should be admitted—contradicted Plaintiff's position during trial.  *See* [ECF No. 116].  Yet, after securing summary judgment, Plaintiff stipulated to such evidence. [ECF No. 154 (J.E. 26)].  The decision allowed Plaintiff to reap the benefit of the Notes without the strategic cost.  Plaintiff wanted to use the portions of the Notes to argue for lack of consent on the sexual assault charge.  And with the summary judgment already in hand, Plaintiff was shielded from the downside of the Notes: Anggara's account that Plaintiff brought him into the closet to begin with.  By declining to reconsider the summary judgment, the court shielded Plaintiff's false imprisonment claim from the jury's scrutiny.

Plaintiff's prejudice argument belies her strategic gambit.  Plaintiff's counsel argued that reconsideration of the summary judgment would prejudice their case because they had only prepared to try sexual assault, and had stipulated to the FBI Notes "in reliance that I already have the false imprisonment claim" and "would not have done that" otherwise.  [Trial Tr. Day 6 at 15:5–8].

That is not prejudice.  It is a consequence of a strategic litigation choice, and to find otherwise is an impermissible usurpation of a jury's fact finding function.  Denial of

reconsideration thus rendered Carnival unable to fairly defend against Plaintiff's sexual assault claim, resulting in a manifest injustice that the Court should correct by granting a new trial.

### C. Summary Judgment Was Also Improper Where the Dispute of Fact Over Plaintiff's Credibility Further Deepened at Trial.

The Magistrate Judge's R&R relied on Plaintiff's sworn deposition testimony as factual evidence of false imprisonment, [ECF No. 151 at 5–6], to the exclusion of Carnival's argument that there was a dispute of fact about credibility. Plaintiff's testimony reflects several memory lapses, exacerbated by testimony at trial, that make the decision to grant summary judgment untenable for this reason as well.

Summary judgment is friendly to the non-moving party. "If reasonable minds could disagree on the inferences arising from the material facts, then the Court must deny the motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In that determination, "the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). And only cases "devoid of any need for factual determinations" should be disposed of at that stage. *Tippens v. Celotex Corp.*, 805 F.2d 949, 952–953 (11th Cir. 1986).

But the R&R did not view Plaintiff's evidence in the light most favorable to the non-moving party, Carnival. Plaintiff's testimony contained, among other things, significant lapses in memory. And "any failure of memory throughout the course of discovery create[s] an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all." *Id.* at 954. Plaintiff responded, "I don't recall" when questioned whether she had asked Anggara to help her hide from her friends during her late-night, alcohol-fueled hide-and-seek game. [ECF No. 95-1 at 100:2–9]. Plaintiff stated that she did not recall how she entered the closet. [*Id.* at

16

99:24–100:1].   And when asked whether she consented to a sexual encounter with Anggara, Plaintiff responded "I don't recall."  [*Id*. at 95:14–16].

Those credibility issues were further exacerbated at trial.  The testimony Carnival elicited from Plaintiff on cross-examination highlighted the existence of a genuine dispute of material fact on credibility.  Plaintiff testified at trial that she did not recall several basic facts about her encounter with Anggara, including whether Plaintiff asked Anggara to help her hide from her friend, whether Plaintiff consented to sexually engaging Anggara, and whether Plaintiff ever tried to leave the closet.  [Trial Tr. Day 5 at 236:25–237:2; 235:6–8; 244:8–10].  Plaintiff's testimony also reflected significant inconsistencies between the evidence and her own account.  For example, the FBI Notes introduced at trial reflected that Plaintiff acted playfully preceding her encounter with Anggara and that she may have asked Anggara for help hiding from her friend; Plaintiff testified to the contrary.  *Compare* [J.E. 26-3], *with* [Trial Tr. Day 5 at 236:25–239:15].

Plaintiff's incomplete recollection of her encounter with Anggara and her testimony's inconsistencies with other evidence raise a credibility issue that was further exacerbated at trial.  But because partial summary judgment had been entered on Plaintiff's claim of false imprisonment, the jury was precluded from making that credibility determination itself.

## II.   EXCLUDING THE FBI REPORTS AT TRIAL WAS ERROR.

For all of the reasons explained above, the jury trial was irreparably tainted by maintaining the summary judgment on false imprisonment in the face of disputed evidence.  Wholly apart from that, moreover, the exclusion of the FBI Reports at trial created substantial injustice.  Plaintiff's experts *relied* on the FBI Reports in forming their expert opinions; indeed, in some places Plaintiff's experts simply repeated statements straight from the reports.  Yet one expert failed entirely to disclose this reliance until trial.  Carnival thus was not able to properly prepare its case, nor even to use the Reports for the limited purpose of impeaching the experts, as the rules squarely

allow.  This error alone is enough for a new trial.

But it does not stand alone.  Excluding the FBI Reports in their entirety was improper.  The jury, at a minimum, should have been permitted to see the Reports' conclusion that the incident was consensual.  The blanket exclusion substantially prejudiced Carnival's ability to put forward its case.

### A. The Court Abused Its Discretion by Excluding the FBI Reports, Even for the Limited Purposes of Impeaching Plaintiff's Experts, after the Experts Relied on Them in Forming Their Opinions.

Parties are required to disclose "all bases of their experts' opinions and to supplement timely their expert disclosures upon discovery of an omission or as required by court order." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (per curiam) (citing Fed. R. Civ. P. 26(a), (e)).  Failure to do so precludes a party from using that undisclosed information.  *See* Fed. R. Evid. 37(c)(1).

Disclosure is particularly important when experts rely on information from third parties that is not in evidence.  Experts can, of course, form their opinion and testify based on facts otherwise inadmissible.  Fed. R. Evid. 703; *United States v. Floyd*, 281 F.3d 1346, 1349 (11th Cir. 2002) (per curiam) ("[H]earsay testimony by experts is permitted if it is based upon the type of evidence reasonably relied upon by experts in the particular field.").  But the expert must be prepared to disclose what information they relied on and to be cross-examined on that evidence.  Fed. R. Evid. 705.  "[A]n expert witness may rely on reports that would be inadmissible as evidence, but, on cross-examination, the expert may be required to disclose the facts or data underlying his opinion . . . the evidence should be admitted only for the limited purpose of discrediting or impeaching the testifying expert and the jury should be carefully instructed about its restricted use."  *United States v. Adams*, 314 F. App'x 633, 651 (5th Cir. 2009) (per curiam) (internal quotation marks omitted).  And this makes sense, because it allows the opposing party

opportunity to review that evidence in advance rather than being ambushed at trial. One party can use Rule 703 to enjoy the benefit of inadmissible evidence by wrapping it in an expert's opinion," but only if it is willing to take the bitter with the sweet; if the expert on the stand discloses otherwise inadmissible evidence supporting her opinion, she is subject to cross-examination thereupon. *United States v. A&S Council Oil Co.*, 947 F.2d 1128, 1135 (4th Cir. 1991).

The Court here allowed the Plaintiff to enjoy the benefit of Rule 703 without shouldering the burden of Rule 705. The Court excluded (incorrectly, *see infra* Section II.B) the FBI Reports in its ruling on Plaintiff's Motion in Limine, [ECF No. 233], yet Plaintiff's expert Dr. Surloff was allowed to rely on the reports in forming her expert opinion without disclosing those reports pretrial *and* without being subject to cross-examination or impeachment on that reliance, to Carnival's substantial prejudice.

The deadline for pretrial disclosure of the bases of expert's opinion came and went, and Plaintiff did not reveal that Dr. Surloff reviewed and relied on the FBI Reports in forming her own opinion. [ECF No. 41]. Dr. Surloff then testified as to her opinion, which cross-examination revealed she had formed only after reviewing the FBI Reports and other documents. Indeed, in many places her report simply "repeated what was written in the [FBI] report"—except, of course, the FBI's ultimate conclusion that the interaction was consensual. [Trial Tr. Day 5 at 87:23–25, 89:8–90:4]. Before trial, Carnival had subpoenaed Dr. Surloff to bring all documents upon which she relied in her expert report. But Dr. Surloff did not bring the FBI Reports to trial. *See* [*id*. at 124:5–23]. When asked about her Initial Report during cross, Dr. Surloff referenced language from the FBI Reports. [*Id*. at 86:12–90:15]. This blindsided Carnival at trial and deprived Carnival of the right to effectively plan a trial strategy with all the facts it was entitled to rely upon.

Plaintiff's Rule 26 violation—part of a pattern of similar violations[3]—was neither "substantially justified" nor harmless. Fed. R. Evid. 37(c)(1). Dr. Surloff's reliance on the FBI Reports was essential to her expert opinion and her testimony. Plaintiff did not testify at trial, for example, that Anggara locked the door or that she saw him do so. *See* [Trial Tr. Day 5 at 186:14–16]. This testimony spoke directly to the central issue of consent. Dr. Surloff, however, used the FBI Reports to speculate that Plaintiff *saw* Anggara lock the door. Exhibit 1 at 1 ("He had locked the door."). Had Carnival known that Dr. Surloff relied on the FBI Reports, Carnival could have impeached Dr. Surloff with the Reports, explaining that she had impermissibly bolstered Plaintiff's testimony by proffering fact evidence outside her personal knowledge.

Also when weighing Dr. Surloff's credibility, the jury could have considered Dr. Surloff's editorial bolstering of Plaintiff's account using evidence from a report *that ultimately came to the opposite conclusion*. The FBI Report concluded the interaction was consensual. Dr. Surloff reviewed the FBI Reports to reach her ultimate conclusion that the interaction was *not* consensual—but the jury was not told that the FBI found otherwise. The FBI Reports, and the portions Carnival would have sought to admit at a minimum, were probative of the single most important element of this case: consent. *See* [Trial Tr. Day 6 at 18:2–4]. Instead Dr. Surloff was able to form an ultimate opinion that the interaction was *not* consensual—all while concealing from the jury the fact the FBI's ultimate conclusion that the interaction *was* consensual and that the U.S. Attorney's Office had declined to prosecute. This stratagem is the legal equivalent of eating one's cake and having it, too. Plaintiff made the tactical decision to have Dr. Surloff rely

---

[3] The failure to disclose or supplement Dr. Surloff's disclosures was not a one-off event. Plaintiff also failed to disclose prior to trial that Dr. Surloff conducted any psychological testing on Plaintiff. Only on the stand did she reveal she had conducted such testing. The Court limited Dr. Surloff's testimony accordingly by precluding her from discussing testing and the supplemental visit and report. [Trial Tr. Day 5 at 81:3–6].

on the FBI Reports.  Carnival should have been allowed to cross-examine and impeach her with those Reports.

So too with Plaintiff's security expert, Dr. Foster.  Although he (unlike Dr. Surloff) disclosed reliance on the FBI Reports, Carnival still was not permitted to admit critical selections of the FBI Reports for the purpose of cross-examining Dr. Foster regarding his findings in light of the FBI's conclusion of consent.  [Trial Tr. Day 3 at 153:3–157:12].  That restriction altogether prevented Carnival from fairly and effectively cross-examining both of Plaintiff's expert witnesses.  This, too, rendered the trial fundamentally unfair.

### B. The FBI Reports' Investigative Conclusions, at a Minimum, Were Admissible Under Federal Rule of Evidence 803(8).

Hearsay in a public investigatory report is admissible if, as relevant here, it is based on (1) "a matter observed while under a legal duty to report," or (2) "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8).  Although "statements of third-parties within that report are double hearsay" that must fall within a hearsay exception or exclusion to be admissible, any "factual findings" and "the conclusions drawn in the report itself are admissible under the public records exception to the hearsay rule." *Goodman v. Kimbrough*, 718 F.3d 1325, 1333 n.2 (11th Cir. 2013).  In other words, the existence of *some* third-party hearsay in an investigative report does not render the report inadmissible hearsay in its entirety.

An official investigative report's conclusions are admissible under the public-record exception.  This includes FBI reports, *United States v. Sallins*, 993 F.2d 344, 347 (3d Cir. 1993); police reports, *Miller v. Field*, 35 F.3d 1088, 1090–91 (6th Cir. 1994); EEOC determinations, *Blanton v. Univ. of Fla. ex rel. Bd. of Trs. of Univ. of Fla.*, 273 F. App'x 797, 804 (11th Cir. 2008) (per curiam); OSHA reports, *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1347–48 (11th Cir. 2020); and final investigative reports by the U.S. Army Criminal Division (concluding

that Army had knowledge of defective product), *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19md2885, 2021 WL 848074, at *2 (N.D. Fla. Mar. 7, 2021).

Even where portions of the reports repeat certain third-party statements, that does not logically require exclusion of the conclusions therein.  For example, in *Miller v. Field*, which involved the admissibility of a police report on a reported rape, the information in the report that was known or observable by police officials themselves—including the fact that certain interviews took place and that the local prosecutor elected not to press charges—was admissible; only the statements from the victim and witnesses were deemed inadmissible.  35 F.3d at 1091.  In *United States v. Mackey*, the court found the public-records exception did not apply to an FBI Report because the report *itself* "did not find or conclude that" the conduct had occurred, "but merely that [a third party] had made that statement" that it had occurred.  117 F.3d 24, 28 (1st Cir. 1997).  In short, the public-record exception at least allows for admission of investigative conclusions and factfindings.  And when there is a mix of admissible and inadmissible hearsay in a report, courts can admit the reports into evidence and either redact the portions that are not subject to an exception or provide a limiting instruction that the inadmissible statements are not evidence of the truth of the matter asserted.  *See, e.g.*, *Miller*, 35 F.3d at 1089; *Blanton*, 273 F. App'x at 806.

In this case, however, the FBI Reports were excluded in their entirety, on the ground that the Reports were all inadmissible hearsay.  [ECF No. 233].  That was error; at the very least, the investigative conclusions contained within the reports should have been admitted.  The court's determination otherwise spawned substantial prejudice to Carnival at trial, as detailed in this motion, and thus deprived it of a fair trial.

The FBI created multiple reports.  [ECF Nos. 111-2, 111-4].  The first consists of a summary of witness statement and a brief summary of facts, including fact that the U.S. Attorney

declined prosecution and that both parties were advised the investigation would not go any further. [ECF No. 111-2 at 4].  The second report details the communications between Carnival Security and the FBI, and concluded that "The investigation revealed the sexual encounter was consensual at the time of the event."  [ECF No. 111-4].

Plaintiff's motion in limine requested the court exclude "[a]ny and all FBI reports/documents regarding this matter."  [ECF No. 116 at 1].  The Court granted the motion, determining that the FBI Reports "constitute inadmissible hearsay" and therefore that "determinations and statements made in those reports—including the FBI's conclusions regarding the Subject Incident at issue in this case—will not be" admitted.  [ECF No. 233].  That was contrary to clear precedent.  *See, e.g.*, *United States v. De Peri*, 778 F.2d 963, 976–977 (3d Cir.1985) (FBI reports fall under the public record exception to the hearsay rule and are admissible).

The court also failed to evaluate the Reports statement by statement to determine which were double-hearsay and which—like the fact of certain interviews or the fact that there was no criminal prosecution and that investigators found the interaction was consensual—were simply factual findings or conclusions properly admissible under Rule 803(8).  In its response to the motion in limine, Carnival gave the court the option to admit just the Reports' conclusions, arguing that, at a minimum, the jury should "hear that there was no criminal prosecution."  [ECF No. 128 at 1].  The Court declined to adopt that approach.  This was wrong.

Near the end of the trial, the Court offered an alternative reason for excluding the Reports, suggesting that it excluded the reports under Rule 403 because they were more prejudicial than probative.  [Trial Tr. Day 6 at 67:4–24.]  The Court focused on two issues:  the investigators had spent only three hours on board; and the investigators' standard for prosecuting is different than the civil trial standard.  But if FBI protocol permits a three-hour investigation, then that should be

sufficiently reliable; and the fact that the investigation was three *years* more contemporaneous than the later trial testimony actually *supports* their reliability.

As to the differing burdens of proof, that is something a limiting instruction could cure. Consider *Blanton*, where an EEOC no-cause determination, admitted under the public-records exception, applied a different standard than would the civil-trial jury.  273 F. App'x at 804-805. The Eleventh Circuit reasoned that differing standards can be explained via "sufficient evidence . . . adduced at trial to place the determination in its proper context," and that the district court properly "instructed the jury as to the appropriate use of the determination by explaining that it is not an adjudication of rights and liabilities" and that it "provided only 'background,' and [was] not conclusive of any factual issue" related to the claims at trial.  *Id.*

There is similarly no reason this court could not have provided a limiting instruction informing the jury of the differing standards at play, instructing that the issue of consent was ultimately for them to decide, and explaining that the FBI and U.S. Attorney determinations were admitted for their consideration.  Particularly given that the FBI Notes were admitted—so the jury at least knew there *was* an investigation—admission of these other facts would have provided the full and proper context for the jury.  *See supra* at 13.  Instead, the jury was aware there was an FBI investigation—but was left in the dark about what the FBI concluded.

This exclusion caused Carnival substantial prejudice.  "The jury was entitled to know that the [FBI] conducted an investigation" and, applying their specialized expertise in the area, "chose to" not prosecute.  *United States v. Gluk*, 831 F.3d 608, 615–616 & n.8 (5th Cir. 2016) (district court should have admitted SEC memos detailing decision not to charge; the federal investigators' expertise increased the memos' probative value, and the jury "is perfectly capable of weighing the evidence").

The FBI Reports' conclusions were important, but the jury did not hear or see them. This evidence—highly probative evidence from a government agency with specialized expertise in investigation—was probative of the most important element of this case, Plaintiff's consent. And as the Court recognized with the related FBI Notes, [Trial Tr. Day 6 18:2–4], evidence that *contradicts* Plaintiff's account of consent would have created a dispute of material fact regarding the central issue in the case: Plaintiff's consent. This Court should correct that error, and remedy the subsequent substantial prejudice, by granting a new trial. .

## III.      DENIAL OF A MITIGATION INSTRUCTION WAS ERROR.

Carnival requested a jury instruction based on Plaintiff's failure to mitigate her damages by not following her doctors' instruction to obtain treatment for her claimed psychological injuries. [ECF No. 241]. The Court denied the instruction, concluding that mitigation of damages is inapplicable to psychological damages. [Trial Tr. Day 6 at 19:2-3 and 80:8-10]. That was also incorrect.

The Eleventh Circuit recently outlined the legal framework for mitigation of damages in *Rubinstein v. Yehuda*, explaining that "a paradigmatic example" of mitigation is a "fail[ure] to obtain proper medical care" after an accident, which may "lessen his recovery for the subsequent aggravated condition." 38 F.4th 982, 1000 (11th Cir. 2022) (citation omitted); *see also  Dolsak v. Comm'r of Soc. Sec.*, 724 F. App'x 914, 915 (11th Cir. 2018) (finding failure to mitigate even though plaintiff had a treatment regimen, where plaintiff failed to seek the treatment that would have further reduced his limitations). The Eleventh Circuit's analysis applies just as much to mental-health care as it does to medical care; a plaintiff's failure to take adequate steps to treat a condition after an injury is a failure to mitigate, regardless of whether that condition is physiological or psychological.

Other federal courts that have addressed this issue have similarly held that mitigation applies to psychological and emotional damages. In *Guzman v. Boeing*, 366 F. Supp. 3d 219, 227 (D. Mass. 2019), for example, the plaintiff suffered PTSD and major depressive disorder after a plane experienced a midair incident. Guzman went to therapy and took medication, but did not receive positive results right away. *Id.* at 241. Boeing argued that Guzman should have tried alternative methods of treatment earlier than she did. *Id.* The court properly instructed the jury that "a person who causes his or her own losses to be unnecessarily large by failing to act reasonably cannot recover for any losses that were avoidable," *id.* at 240, and the jury found that Guzman had failed to mitigate a portion of her damages. *Id.* at 227, 241. Similarly, in *Elms v. Crowley Marine Serv., Inc.*, the plaintiff suffered from PTSD after falling into the water while working as crew on a towing vessel. No. C95-363Z, 1996 WL 881928, at *3 (W.D. Wash. Sept. 16, 1996). The plaintiff received psychological care for more than eighteen months, but discontinued his treatment. *Id.* The district court there concluded that the plaintiff had failed to mitigate his PTSD by discontinuing treatment, much like Plaintiff here. *Id.*

There was ample evidence of Plaintiff's failure to mitigate her damages. Plaintiff saw a psychiatrist only twice, despite his recommendation that she undergo "counseling on an ASAP basis." [Trial Tr. Day 5 at 250:14–18]; *see e.g.*, Def. Trial Ex. 7-5 and 7-15. Plaintiff testified that she sought remote treatment through a phone application that offers online mental health assistance, [Trial Tr. Day 5 at 251:1–22], but could not provide any records of that treatment. [Trial Tr. Day 5 at 234:6–16]. And Plaintiff's own expert, Dr. Surloff, testified that Plaintiff needed "several years of treatment." [Trial Tr. Day 5 at 142:16–21]. She explained that trending "downhill," as Plaintiff claimed, would be expected of "PTSD patients or people that are not in therapy." [Trial Tr. Day 5 at 56:25 and 57:1–5]. Dr. Surloff recommended that Plaintiff see a

psychiatrist twice a week and a psychologist once a week, in addition to group therapy.  [Trial Tr. Day 5 at 65:17–22].  Plaintiff did not obtain this treatment.  [Trial Tr. Day 5 at 250:14–18].

The failure to give a requested jury instruction is reviewed for abuse of discretion.  *United States v. Singer*, 963 F.3d 1144, 1162 (11th Cir. 2020).  "A district court abuses its discretion if (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party."  *Fried v. Stiefel Lab'ys, Inc.*, 814 F.3d 1288, 1292 (11th Cir. 2016).  All three elements are met here:  The mitigation instruction correctly identified psychological harm as being subject to mitigation; the issue was squarely before the jury; and Carnival was substantially prejudiced by the lack of a mitigation instruction.

"Prejudice results when a district court's failure to give a jury instruction creates a 'misimpression that require[s] a correction' - that is, when it has an 'effect on the verdict.'"  *Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 924 (11th Cir. 2022) (quoting *Finnerty v. Stiefel Lab'ys, Inc.*, 756 F.3d 1310, 1324 (11th Cir. 2014)).  Here, the effect on the verdict was profound.  The jury awarded $240,000 in future medical care and $10,000,000 in pain and suffering, which the jury could have chosen to reduce for failure to mitigate, had it received the proper mitigation instruction.  Unaware that it should consider Plaintiff's failure to mitigate, however, the jury returned a verdict for what it determined was the amount of Plaintiff's psychological damages without taking into account how those damages could have been reduced with early and regular treatment.

A new trial is required for this independent reason as well.

## CONCLUSION

For the foregoing reasons, this court should grant Carnival's request for a new trial.

Respectfully submitted,

MASE SEITZ, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone:  (305) 377-3770
Facsimile: (305) 377-0080

By:___*/s/ Curtis Mase*_____
        CURTIS J. MASE
        Florida Bar No. 478083
        cmase@maselaw.com
        WILLIAM R. SEITZ
        Florida Bar No. 73928
        wseitz@maselaw.com

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Undersigned counsel certifies that counsel for the Defendant has conferred in a good faith effort to resolve the issues raised in the motion and Plaintiff's counsel objects.

_/s/ Curtis J. Mase_____
Curtis J. Mase

### CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System

("ECF").  Parties may access this filing through ECF.

*/s/ Curtis J. Mase*
Curtis J. Mase