UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 19-cv-24766-WILLIAM/TORRES

JANE DOE,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

# DEFENDANT'S MOTION FOR REMITTITUR[1]

Defendant, Carnival Corporation ("Carnival"), moves the Court to remit the jury verdict to a reasonable amount pursuant to the Fed. R. Civ. P. 59(a)(1)(A).

## INTRODUCTION

This is a maritime case in which Plaintiff alleged that, while playing "hide and seek" while "blacked out drunk," a crewmember aboard the Carnival *Miracle* falsely imprisoned and sexually assaulted her in a storage closet. [Trial Tr. Day 6 at 244:14–16]. A jury found Carnival liable on one of Plaintiff's claims—vicarious liability for the crewmember's assault—and awarded $10,243,000 in damages [ECF No. 307].

The amount of the jury's award does not bear any rational relation to the evidence presented at trial, and the damages awarded exceed the award in a substantially similar case ten-fold. Other courts have found remittitur appropriate in similar circumstances. This Court should do the same by remitting the jury's award to the maximum amount the evidence supports: $1,243,000.

---

[1] By seeking remittitur, Carnival does not waive its claimed entitlement to a new trial, as set forth in its motion for new trial. [ECF No. 329].

## FACTUAL BACKGROUND

Prior to trial, the Court entered partial summary judgment for Plaintiff on the false imprisonment claim. The jury found Carnival vicariously liable on the assault claim. It found for Carnival on all other claims.

Plaintiff drank heavily on the day and evening of her encounter with the crewmember, Fredy Anggara, and had only a hazy recollection of it. [Trial Tr. Day 6 at 244:14–16]. She did not recall whether she asked Anggara to help her hide from her friend, whether she ever tried to leave the closet, or whether she consented to a sexual encounter. [Trial Tr. Day 5 at 236:25–237:2; 235:6–8; 244:8–10].

Plaintiff sought $60,243,000 in damages: $3,000 for past medical care, $240,000 for future medical care, and $60,000,000 for past and future pain and suffering. Her past and future damages were nonphysical: mental anguish, pain and suffering and post-traumatic stress disorder (PTSD). Plaintiff testified she contemplated suicide after the encounter, experienced flashbacks making her nervous and scared, and had trouble sleeping at night. [Trial Tr. Day 5 at 223:25–224:5]. But she obtained little medical treatment prior to trial. [Trial Tr. Day 5 at 250:14–18].

Plaintiff testified that she stopped contemplating suicide after the birth of her son. [Trial Tr. Day 5 at 222:21–223:4]. By the time of trial, she was in a happy romantic relationship with Mr. Bradley Boaz, the father of her son, with whom she often spends time when not working. [Trial Tr. Day 5 at 157:12–15; 224:6–10]. She said she planned to have another child with Mr. Boaz, go to business school, start a professional career, and to "move forward and be a good mom." [Trial Tr. Day 5 at 224:6–10; 226:15–18].

Plaintiff's psychological expert, Dr. Cheri Surloff, examined Plaintiff twice before trial, and testified that Plaintiff was diagnosed with obsessive compulsive disorder, bipolar disorder,

and depression prior to the cruise. [Trial Tr. Day 5 at 98:3–25 and 103:5–22]. She experienced serious past traumas in her early life, including the death of her father at age six, molestation by her grandfather, and her mother's substance abuse. [Trial Tr. Day 5 at 49:20–50:6]. Dr. Surloff explained that Plaintiff accordingly had post-traumatic stress disorder symptoms well prior to the cruise, including as recently as two weeks before. [Trial Tr. Day 5 at 106:21–107:12]. Dr. Surloff also testified that Plaintiff previously exhibited tendencies of self-harm and had attempted suicide on multiple occasions during her youth. [Trial Tr. Day 5 at 97:5–24; 103:15–22]. Plaintiff's encounter with Anggara caused post-traumatic stress "because of the other things that happened to her that made her anxious and depressed as a child." [Trial Tr. Day 5 at 53:2–8].

Plaintiff did not consistently seek mental-health care after the cruise. She saw a psychiatrist twice, despite his recommendation that she undergo "counseling on an ASAP basis." [Trial Tr. Day 5 at 250:14–18]; *see e.g.*, Def. Trial Ex. 7-5 and 7-15. She also sought remote treatment through a phone application that offers online mental health assistance, [Trial Tr. Day 5 at 251:1–22] but did not provide any records of that treatment. [Trial Tr. Day 5 at 234:6–16].

As Carnival has explained in its separate new-trial motion, the jury was deprived of the instruction needed to assess the proper amount of damages based on the evidence. Instead, Plaintiff's $60 million demand became the sole "anchor" for the jury's damages calculations, leading to a verdict that is irreconcilable with the actual evidence in the case.

### **MEMORANDUM OF LAW**

It is well established that this Court has the discretion to remit excessive verdicts that are outside the bounds of the evidence. Remittitur is a vehicle to remedy the jury's excessive verdict and potentially avoid a new trial. *See Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999). The Court should remit the jury's verdict to the maximum amount that the

evidence can support: $3,000 for past medical expenses, $240,000 for future medical expenses, $500,000 for past pain and suffering, and $500,000 for future pain and suffering, a total verdict of $1,243,000.

I.   **Legal Standard**

"A federal court's power to order a remittitur grew out of [its] authority to grant a new trial." *Id.* (internal quotations omitted).[2] "'Remittitur' is the procedural process by which an excessive verdict of the jury is reduced. It is well understood that a 'jury's verdict should not be disturbed if there is competent evidence in the record to support'" it. *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1057 (S.D. Fla. 1995) (internal citations omitted). In considering a motion for remittitur, "the standard for determining the appropriateness of the award is whether it exceeds the amount established by the evidence." *Id.* (citing *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985)). "The Court is not to substitute its judgment for the jury's, and where there is sufficient evidence in the record to support the award, the Court should not reduce the award merely because it would have found differently." *Id.* The party claiming the award as excessive "has the burden of showing it is unsupported by the evidence, or that the jury was influenced by passion or prejudice." *Goodloe v. Royal Caribbean Cruises, Ltd.*, 418 F. Supp. 3d 1112, 1130 (S.D. Fla. 2019).

II.  **Argument**

In determining the appropriateness of an award of compensatory damages, courts consider (1) the size of the award; (2) the rational relationship between the award and the evidence adduced at trial; and (3) awards in similar cases. *Copley v. BAX Global, Inc.*, 97 F. Supp. 2d 1164, 1172

---

[2] Under Federal Rule of Civil Procedure 59(a)(1)(A), a court may grant a new trial "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). An excessive award of damages is one of those reasons. *Goodloe v. Royal Caribbean Cruises, Ltd.*, 418 F. Supp. 3d 1112, 1120 (S.D. Fla. 2019).

(S.D. Fla. 2000). To determine whether the jury's award is within the range dictated by the evidence, a court must view the evidence in the light most favorable to the non-moving party. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1266 (11th Cir. 2008).

      **a.    There is no rational relationship between the evidence and the size of the jury's award of damages.**

The trial evidence highlights the excessive nature of the jury's award. To prove that she suffered a variety of emotional and psychological damages, Plaintiff offered her own testimony and that of Dr. Cheri Surloff, her expert psychological witness. [Trial Tr. Day 5 at 40–154; 155–263]. Plaintiff testified that she suffered depression, anxiety, suicidal thoughts, and other emotional damages—but she also testified that she had suffered significant emotional distress and psychosexual trauma well *before* her sexual assault. [Trial Tr. Day 5 at 49:20–50:6; 97:17–24; 103:5–22; 215:20–224:13]. Dr. Surloff testified that Plaintiff's symptoms reflected post-traumatic stress disorder "because of the other things that happened to her that made her anxious and depressed as a child." [Trial Tr. Day 5 at 53:2–8]. Dr. Surloff confirmed that Plaintiff had PTSD and symptoms of depression, anxiety, and suicidal thoughts for years before her encounter with Anggara. [Trial Tr. Day 5 at 49:20–50:6; 97:17–24; 103:5–22]. And by the time of trial, Plaintiff by her own account was functioning well, caring for her son, spending time with her partner, planning for another child and for business school, a professional career, and to "move forward and be a good mom." [Trial Tr. Day 5 at 224:6–10; 226:15–18].

Given Plaintiff's long history of preexisting trauma, stress, and anxiety *prior* to the events giving rise to her claim here, the jury's award of $10,000,000 in pain-and-suffering-related damages lacks any rational relationship to Plaintiff's own testimony. "In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Collins v. Koch Foods, Inc.*, No.

20-13158, 2022 WL 1741775, at *4 (11th Cir. May 13, 2022) (quoting *Goldstein*, 758 F.2d at 1448). Given the limited evidence at trial, this Court should remit the jury's $10,243,000 award of damages to $1,243,000; the evidence does not support any number beyond that.

### b. The sheer size of the jury's award is excessive.

A jury's award of pain and suffering damages "depends heavily on the facts," and "the sky is not the limit." *Markland v. Norfolk Dredging Co.*, 772 F. Supp. 1241, 1243 (M.D. Fla. 1991). By requesting the jury to award her over $60,000,000 in pain-and-suffering-related damages, Plaintiff aimed beyond the sky—she shot for the moon. [Trial Tr. Day 6 at 106:2–23; 140:2–8]. Plaintiff's request to the jury for this exorbitant amount served as an unfairly prejudicial anchor to which the jury's calculation of damages was tied.

"'[A]nchoring and adjustment' is a bias in which individuals' numerical judgments are inordinately influenced by an arbitrary or irrelevant number." Chapman & Bornstein, *The More you Ask for, the More You Get: Anchoring in Personal Injury Verdicts*, 10 APPLIED COGNITIVE PSYCHOLOGY 519, 519 (1996) (citing Kahneman & Tversky, *Judgment under Uncertainty: Heuristics and Biases*, 185 SCIENCE 1124 (1974)). Anchoring bias in the context of civil jury verdicts is well known, and its inflationary effects have been thoroughly documented. *See, e.g.*, Campbell, *et al.*, *Countering the Plaintiff's Anchor: Jury Simulations to Evaluate Damages Arguments*, 101 IOWA L. REV. 543, 546 (2016) ("Numerous studies have suggested that a successful plaintiff can obtain a higher damage award simply by . . . requesting more money from the jury. Psychologists call this an 'anchoring effect,' referring to when 'individuals' numerical judgments are influenced by an arbitrary or irrelevant number.'"); *see also* John Malouff & Nicola S. Schutte, *Shaping Juror Attitudes: Effects of Requesting Different Damage Amounts in Personal*

*Injury Trials*, 129 J. SOC. PSYCHOL. 491, 495 (1989) ("The primary finding of the present experiment was that when more money was requested for damages . . . the jurors awarded more.").

The effect of anchoring bias was clear here: The sheer size of the jury's award—rendered despite delivering a verdict for Carnival on all other remaining counts—plainly keyed off of Plaintiff's counsel's excessive request of over $60,000,000, given that the size of the jury's award does not rationally relate at all to the actual evidence of Plaintiff's damages.

### c.    Other jury verdicts and orders of remittitur in similar cases shows that remittitur is appropriate.

This Court can consult the size of jury awards in factually analogous cases in addition to other types of cases in which a court has found remittitur appropriate. The most factually analogous case is *Doe v. Celebrity Cruises*, in which a jury in the Southern District of Florida awarded the plaintiff $1,000,000 after a crewmember aboard the M/V *Zenith* was found to have sexually battered her. *See* 00-cv-02523, 2002 WL 34683586 (S.D. Fla. Nov. 22, 2002) (summary of jury verdict). The plaintiff in *Doe v. Celebrity* and Plaintiff in the instant case suffered similar injuries: both alleged they were held against their will for a brief period and sexually assaulted. *Celebrity Cruises*, 00-civ-02523, 2001 WL 345453389 (S.D. Fla. Aug. 2, 2001) (Plaintiff's Third Amended Complaint). A notable contrast between the two cases, however, is that plaintiff in *Doe v. Celebrity* sought and obtained punitive damages *in addition to* compensatory damages for pain, suffering, and humiliation—all of which added up to one million dollars. *Id.* The jury's *ten*-million-dollar compensatory award in the instant case—with no punitives awarded—dwarfs the compensatory-plus-punitive award in that case despite the significant factual resemblance.

Other cases also present comparable fact patterns. The court in *Moreno v. Neiman-Marcus* remitted a $500,000 award for emotional distress damages in an employment discrimination case to $80,000 because the plaintiff's testimony—like Plaintiff's testimony here—reflected that she

suffered symptoms of emotional distress *before* suffering the injury. *See, e.g.*, Case No. 05-22488-CIV-SEITZ/MCALILEY, 2007 WL 970147, at *2 (S.D. Fla. Feb. 14, 2007). Thus, in considering whether to remit an excessive jury verdict for emotional damages, courts consider all the factual circumstances, including pre-existing stress or trauma not attributable to the case. And even in cases of significant injury, courts remit staggering verdicts to bring those awards into some relationship with the evidence in the case.

Plaintiff's preexisting psychological state and her recovery following the encounter mitigate her damages for pain and suffering. Plaintiff by her own admission struggled with her mental health and contemplated self-harm *before* her encounter aboard the Carnival *Miracle*. [Trial Tr. Day 5 at 97:5–24]. She also testified that those thoughts stopped after she gave birth to her son following her encounter aboard the *Miracle* and that she is now in a stable relationship and wants to have another child and start a professional career. [Trial Tr. Day 5 at 157:12–15; 222:21–223:4; 224:6–10; 226:15–18]. The compensable harm at issue, in other words, is limited by Plaintiff's own evidence to a narrow band of time following the encounter itself.

The facts here, considered in totality and in the light most favorable to Plaintiff, support at most a verdict of $1,243,000: $3,000 for past medical expenses, $240,000 for future medical expenses, $500,000 for past pain and suffering, and $500,000 for future pain and suffering.

## CONCLUSION

The jury's award of $10,243,000 substantially exceeded any reasonable amount supported by the evidence in this case. This Court should remit the jury's award of damages to the maximum amount that the evidence supports, $1,243,000.

WHEREFORE, Carnival requests the Court grant the relief requested, and any other relief it deems just and proper.

CASE NO.: 19-cv-24766-KMW

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Undersigned counsel certifies that it has conferred with Counsel for Plaintiff in a good faith effort to resolve the issues in this motion, and that Counsel for Plaintiff opposes relief requested.

Respectfully submitted,

MASE SEITZ, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone:     (305) 377-3770
Facsimile:     (305) 377-0080

By:     */s/ William Seitz*
        CURTIS J. MASE
        Florida Bar No.: 478083
        cmase@maselaw.com
        WILLIAM R. SEITZ
        Florida Bar No. 73928
        wseitz@maselaw.com