**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

CASE NO.: 19-24766-CIV-Williams/Torres

AT LAW AND IN ADMIRALTY

JANE DOE,

   Plaintiff,

vs.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE,

   Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR REMITTITUR**

JANE DOE ("Doe"), by and through her undersigned counsel, hereby files her Response in Opposition to Defendant's Motion for Remittitur [D.E. 342] and in support thereof states:

**Introduction**

On December 2, 2018, Jane Doe, was a 21-year-old passenger on the Carnival Miracle cruise ship when she was sexually assaulted by a Carnival employee inside a maintenance closet, leaving her psychologically crippled. Reaching a fair verdict required a jury committed to paying close attention to the evidence, including the testimony of the various witnesses, specifically Plaintiff and Dr. Cheri Surloff. Assigning a fair monetary value to her permanent psychological and emotional injuries required a fair assessment of all relevant events as well as an understanding of Doe's life after she was raped. Carnival did not present any testimony to dispute Doe's damages. While Carnival seems to have found a way to continue to ignore the evidence, the jury did not.

1

The jury instead did as they promised, weighing the evidence and ultimately reached the correct and thoughtful decision that Doe was sexually assaulted by a Carnival employee, and as a consequence, suffered incredibly in the past, and will suffer significantly in the future. By the end of the trial, the evidence was overwhelming and the jury did its job rendering a fair verdict in favor of Doe. Carnival's Motion is without merit.

In this trial, the jury was in the best position to see and weigh the credibility of witnesses and hear the extraordinary testimony of rape victim Jane Doe as she painstakingly recounted the disturbing assault she endured. It is entirely reasonable and logical that the horrific suffering of Doe caused by a Carnival employee resulted in a significant compensatory damages award.

## **Prior to the Subject Cruise**

For the year leading up to the subject cruise, things were going really well for Doe. She was living with her sister, who had three children that Doe was taking care of and considered her "best friends". *Trial Tr. Day 5* at 158:5-18. In terms of her work life, she was working already for several years at Starbucks. *Id.* at 161:11-14. She was a shift supervisor working about 35-40 hours a week. *Id.* She had a second job where for 20 to 30 hours a week she was working as a server at a country club. *Id.* at 161:15-16. In the months leading up to the subject cruise, Doe got a third job to be able to afford paying for herself and her friend Amanda to do lots of excursions during their trip. *Id.* at 161:20-162:4. She got a job working an additional 15 to 20 hours a week as the front desk receptionist at a hotel during the overnight shift. *Id.* at 162:6-11. Doe felt strong. *Id.* at 163:4.

Doe had serious plans. She planned on joining the U.S. Navy. *Id.* at 167:25. She had an appointment to take the ASVAB on December 28, 2018. *Id.* at 212:12-21. Doe

2

was optimistic. She shared how before the cruise, she did have a breakup with a boyfriend but she had a lot of friends, had her sister's kids, and "thought as though (her) life was moving forward and (she) was going to go on to bigger and better things". *Id.* at 168:14-17. Doe described how she was in the best shape of her life at the time of the cruise. *Id.* at 166:3-7. She was going to the gym almost every day and was doing the keto diet. *Id.* at 166:9-10. As a result she lost 25-30 in 2018. *Id.* at 166:14-15. She was trying to get into the best shape that she could be in before joining the Navy and felt she was physically ready. *Id.* at 168:6. Moreover, once on the subject cruise, she shared how she was having the time of her life in the days leading up to the sexual assault, refuting Carnival's claims that she was already damaged. *Id.* at 164:23-166:25.

### The Sexual Assault and Plaintiff's Remaining Time on the Subject Cruise

Doe provided a compelling account of her victimization in which she was raped inside a maintenance closet by Carnival's own employee. Just minutes before entering the closet, Doe slipped and fell and hit the back of her head. *Id.* at 184:23-25. Moreover, Doe was "blacked out drunk". *Id.* at 184:12 and 257:14. Doe did not know how she ended up inside the closet, and described to the Jury how once inside the closet she only remembered "pictures" of what occurred. *Id.* at 209:10-12 and 216:8-11. She remembered looking up, seeing Anggara's hand holding onto a lock, and staring down at her. *Id.* at 186:15-16. Doe remembered being scared, and so she asked him questions about himself to "calm the situation." *Id.* at 258:1-2. Doe recalled how Anggara kept saying that she looked like his girlfriend. *Id.* at 186:18-20. Doe recounted how she remembers Anggara ejaculating while she was bent over, and she was looking back at him and he repeatedly said "thank you". *Id.* at 187:10-16.

Doe then explained she did not remember how she got out of the closet. *Id.* at 187:19-20. The next thing Doe remembered was being by a staircase and feeling

3

Anggara leaning on her. She recalled Anggara putting his arms over her back and having his face on her neck and telling her he wanted to go back to her cabin as "he was on break." Doe recounted feeling scared. Doe pulled away from him and went down the stairs. *Id.* at 187:22-188:8. Doe was disoriented and looked to find her way back to her cabin. *Id.* at 188:11-189:5. She recounted being in her cabin and crying. *Id.* at 189:21-24. Doe remembered Amanda helping Doe walk to guest services. *Id.* at 191:2-5. Doe recounted having a panic attack shortly after she arrived at guest services, and sitting on the floor. *Id.* 191:11-12; and 249:16-20.

Doe recalled being at the medical center inside the subject cruise where she was crying and freaking out. Dr. Natalia Molina put her hand on Doe's sternum and pushed down on her chest. *Id.* at 192:6-11. Doe also remembered Dr. Molina apologizing for what had happened to her and stating "Unfortunately, this happens all the time". Doe agreed to subject herself to a sexual assault examination. *Id.* at 192:20-193:4. Doe felt exposed during the intrusive testing she had to endure. Just a few hours after being raped, Doe had to undress and be examined and swabbed for evidence from head to toe including her breasts, and private parts below. Doe was also given medication and an injection to prevent from STDs and pregnancy. *Id.* at 193:12-194:6.

After the examination, Doe was immediately taken back to her cabin to give an oral and written statement. *Id.* at 196:6-9. She was humiliated as she walked back to her cabin without being given proper clothing. Doe went to the bathroom in the cabin and found blood when she wiped her front private part. *Id.* at 198:12-18. Doe was then taken the library to speak with the FBI. *Id.* at 198:19-199:1. After speaking with them, Doe waited at the chapel where she felt blood dripping down her leg and had to wipe it off using the t-shirt dress she was wearing. *Id.* at 199:4-14. Doe had to walk around

4

the cruise with only a big t-shirt dress on and no underwear. *Id.* at 200:9-23. Doe asked multiple times if she could shower and she was not allowed to. *Id.* at 201:7-15.

### **Plaintiff Declined Significantly Post-Cruise**

Incredibly, Carnival failed to provide Doe with a copy of her medical records. No one at Carnival told her of all the medical appointments she should schedule as follow up for the rape. In the days following the subject assault Doe experienced cramps and a lot of bleeding which lasted two (2) weeks. *Id.* at 208:17-20. She was concerned. She texted with Carnival asking for her records and received a two (2) page printout that showed things that were done. Importantly, Carnival did not provide her with the medical records which would have put her on notice that she needed to schedule numerous follow up appointments. Nor did anyone tell her of the importance to get follow up care.

As the weeks progressed Doe felt numb and uninterested in anything. She had aspirations to join the U.S. military and did not go through with it as she did not feel emotionally capable. She also left two (2) of the three (3) jobs she had prior to the cruise. She recalled crying a lot, being irritable and emotional. Approximately two months after the rape, Doe's hair began to fall out and it became so bad she decided to shave off her beautiful, long, blonde hair. After shaving all of her hair, Doe felt like it was the first time since the cruise she could breathe. She then got a tattoo on the side of her shaved head. *Id.* at 213:14-25; 216:19-217:10; and 219:6. Doe's mental health greatly diminished and she began to contemplate suicide. She thought about it most days, especially in the evenings. *Id.* at 216:1-7. The pictures in her head of the rape also stayed with her and she recounted seeing them over a thousand times since. *Id.* at 216:8-16. At her lowest point, Doe created a plan to commit suicide. Her plan was to get a gun and take herself somewhere far away and shoot herself. Doe wrote letters to

10800 Biscayne Blvd. · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

her friends and family for after she was dead. She also visited some of her friends to create a happy memories for them before she would kill herself. *Id.* at 221:18-222:18.

### **Dr. Surloff Explained to the Jury Plaintiff's Condition, Behaviors, and Future**

During trial, the jury also heard from neuropsychologist, Dr. Cheri Surloff. During her testimony, Dr. Surloff listed the following specific symptoms Jane Doe exhibited that supported her diagnoses of PTSD as a result of the subject assault on the cruise: "She had insomnia, she had hypervigilance, she was fearful. She was so afraid that she would be raped or attacked, she even shaved her head. I mean she was not acting in any way in an appropriate way socially with people. She was withdrawn. She had exaggerated fears and intrusive thoughts and she had nightmares." Dr. Surloff also affirmed Doe met almost every PTSD criteria for the DSM-V and had significant PTSD at the time of her evaluation in 2020. *Id.* at 151:19-152:2.

Dr. Surloff also testified regarding Doe's behavior after subject assault. She stated there was acting out. She explained how people act out their feelings and how she believes that that is what Doe was doing when she shaved off her long beautiful blonde hair and endured the pain of having a tattoo affixed to the side of her head. Dr. Surloff believed Doe wanted to make herself unattractive because she felt so vulnerable that she might be raped or sexually attacked again. *Id.* at 57:11-16

As for Doe's previous childhood traumas, when asked if Doe would have all these problems the rest of her life solely based on her previous childhood traumas Dr. Surloff responded in the negative. Dr. Surloff explained that Doe was "more vulnerable to having a trauma like a rape, but that's a very unusual event to be raped." "But she is and has tried to, I think, work through that until this event, which was just so out of the ordinary and so terribly frightening to her." *Id.* at 60:18-61:4.

In regard to previous symptomatology, Dr. Surloff explained the difference between

10800 Biscayne Blvd. · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

having PTSD symptoms and being diagnosed with PTSD.  Dr. Surloff testified that there are different criteria for each illness or a description of each entity so that we can be sure that you meet the criteria for that particular illness; whether it's bipolar or depression.  Dr. Surloff explained you can have insomnia after a breakup because you're depressed and your anxious.  That doesn't mean that you have post-traumatic stress disorder.  It's the constellation of the things that make you have a diagnosis of post-traumatic stress disorder.  Dr. Surloff once again affirmed that Doe did not meet the criteria for post-traumatic stress disorder from the childhood symptomatology.  **She met the PTSD criteria only after she was raped by the Carnival employee**. *Id.* at 149:13-150:1.

Carnival has made light of Plaintiff's current emotional and psychological state.  Carnival used Doe's current relationship with the father of her child to suggest Doe had moved past this event.  However, Dr. Surloff testified she was concerned because of Doe's post-traumatic stress and Doe's background of the traumatic events that happened to her as a child, that she does not express herself emotionally to him, and that was interfering with their relationship.  Doe testified that at the time of trial, she and the father of her child had not had sexual intercourse in five (5) months. *Trial Tr. Day 6* at 61:20-25.

Dr. Surloff also believes Doe needs treatment to help her with her relationship because Doe's issues are very deep-seated when you've been disappointed and betrayed and abandoned when you're a young child, through death, and then through your parents' psychological issues and drug abuse and alcohol abuse of the mom, and then not believing her when she said that she was previously assaulted.  Dr. Surloff also believed that certainly was part of her post-traumatic stress in feeling she wouldn't be believed with the subject rape.  "Doe had so many things really going against her, and

7

then, you know, she has to get raped on a cruise where the assumption is that you're safe. Just like you should be safe with your grandfather…" *Trial Tr. Day 5* at *153:8-154:1*.

Dr. Surloff explained that Doe has triggers that make her experience the subject assault all over again. She explained how everyday events (neutral stimuli) gets paired with an event that happened to you that was horrific and creates hyperarousal response. As an example, now Doe has a child, and as a mother going to the store with her son, she has to bend over to put her baby in the car, she is so fearful someone is going to come behind her and hurt her. *Id.* Doe testified that she is afraid of somebody coming up from behind them when she is alone with her son. Doe also testified that she will specifically go to Publix grocery store if she is by herself with her son because all of the cart people are outside the store, and she feels safer. *Id.* at 223:7-19. Another example is Doe's continuous fear when she is home alone at night or when she hears a noise in the house. *Id.* at 59:24. Doe testified in those nights she is alone, she cannot sleep and has to have every light on. *Id.* at 224:2-4.

Regarding future treatment, Dr. Surloff recommended Doe sees a psychiatrist twice a week initially, sees a psychologist once a week for therapy, get into a group especially for post-traumatic stress disorder, and exercise for anxiety. Dr. Surloff testified that because of the vulnerability that Doe had coming into this rape, that she might require much more prolonged therapy, at least continuance and maintenance to make sure, because things happen in life, life is not just a smooth road, it's a bumpy road too, and Dr. Surloff doesn't want to see Doe regress in any way once she, hopefully, would improve.

Carnival did not present a single piece of evidence to contradict the above evidence. Carnival did not present any expert testimony to contradict Dr. Surloff's testimony.

8

Carnival characterizes the jury's $10 million verdict for past and future pain and suffering as "irreconcilable" and "excessive."  In awarding $10 million in non-economic damages, the jury placed an appropriately high value on the brutal violation of a young woman whose mental health was stolen from her.  In so doing, the jury recognized that Doe has a right to bodily integrity and is owed a duty of protection so that she can travel in a safe environment.  While this verdict comes at a high cost to the Defendant, this verdict came at a higher cost to the Plaintiff.  The vivacious 21-year old eager to travel and explore the world was been replaced by a withdrawn, sullen, less social woman struggling to find her way with a diagnosis of Post-Traumatic Stress Disorder which includes flashbacks, sleep disturbances, fear, anxiety, and depression *Trial Tr. Day 5* at at 223:25-224:5.  It would be hard to conceive of a more injurious event with enduring consequences than the rape suffered by Doe.  Defendant's difficulty in finding cases in similar verdict ranges lies in the fact cases with these facts almost never make their way to verdict, as it is very seldom that any Defendant would so undervalue the claim so as to allow it to get that far.

### **Memorandum of Law**

The Eleventh Circuit reviews awards of compensatory damages for intangible, non-economic harms under a particularly deferential standard "because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." *Ferrill v. Parker Grp. Inc.*, 168 F.3d 468, 476 (11th Cir. 1999); *See also. Griffin v. City of Opa-Locka,* 261 F.3d 1295 (11th Cir. 2001) (affirming denial of remittitur of $2 million verdict for sexual assault and rape for a trial which occurred 22 years ago).

CARNIVAL suggests that the $10 million jury award for past and future pain and suffering and intangible damages should be remitted to the $1 million awarded by a jury in *Doe v. Celebrity Cruises Inc.*, 394 F.3d 891 (11th Cir. 2004), a case where the verdict

10800 Biscayne Blvd. · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

was rendered November 22, 2002, over 20 years ago. *See Doe v. Celebrity Cruises Inc.*, 287 F.2d 1321, 1325 (S.D. Fla. 2003).

Much more recently, in *Doe v. School Board of Miami-Dade County Florida*, 2022 WL 3973881 (S.D. Fla. 2022) (Williams, J.) this Court denied a similar motion for remittitur of a jury verdict which awarded a plaintiff sexual assault victim $6 million in intangible damages ($3 million for past pain and suffering and $3 million for future pain and suffering).

As this Court outlined in *School Board of Miami-Dade County*, in determining whether remittitur is appropriate this Court should consider: (1) the size of the award; (2) the rational relationship between the award and the evidence adduced at trial; and (3) awards in similar cases. *Id.* at *4. Moreover, this Court observed that in considering whether remittitur is appropriate "the court is bound to allow plaintiffs '**the maximum possible recovery**,' keeping in mind that 'the court is not to substitute its judgment for the jury's . . .'" *Id.* (quoting *Walker v. Grandpa's Real Est. Inc.*, 2022 WL 2308101 at *1 (S.D. Fla. 2022) (quoting *Moses v. Kmart Corp.*, 905 F.Supp. 1054, 1057 (S.D. Fla. 1995). (Emphasis added by this Court).

This Court undertook a review of national verdicts which supported the jury's verdict. Putting aside even higher verdicts in California, this Court focused upon a 2017 Miami verdict that found a plaintiff entitled to $49 million directly against a teacher that sexually assaulted a student. Subtracting the $30 million in punitive damages from that case, the jury awarded $19.3 million in compensatory damages. *Id.* at *6. This Court concluded that "in light of the range of awards in teacher-on-student sexual assault cases, the verdict does not exceed the range of reasonable possible recovery or shock the court's conscience." *Id.*

10

10800 Biscayne Blvd. · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

Moreover, in *John Doe No. 69 v. Father Neil Jo. Doherty*, Case No. 11-10986 CA 05, a Miami-Dade County jury awarded $100 million dollars to the victim parishioner who was sexually assaulted by a Catholic priest. See Verdict Form as **Exhibit 1**. That jury awarded that plaintiff the exact same amount for past pain and suffering ($6 million) and future pain and suffering ($4 million) as the jury in our case. These large verdicts reflect the serious value our society places on sexual violence and unprovoked sexual aggression.

There is one case that is most similar to the subject case. Samantha Baca was a young woman in her early twenties when she was sexually assaulted on a ship in 2015. She sued the crewmember's employer for the sexual assault. Both Ms. Baca and Jane Doe experienced: panic attacks; the inability to have normal relationships with friends, family, or boyfriends; constant fear; and need the lights to be on when sleeping. Both Plaintiffs went from having an exceptional capacity for the enjoyment of life to a shell of their former selves. In 2018, the same year of the subject sexual assault, a Broward County jury awarded Ms. Baca over $70 million, including $66 million for physical and emotional pain and suffering as a result of being raped by a fellow crewmember. ($6 million for past pain and suffering and $60 million for future pain and suffering). See the attached verdict as **Exhibit 2** in *Samantha Baca v. Island Girl, Ltd.*, Seventeenth Judicial Circuit Case Number 16-003324. The trial court denied the motion for remittitur ***(Exhibit 3)*** and the 2018 Fourth District Court of Appeal docket sheet ***(Exhibit 4)*** confirms that the case was settled while on appeal.

The subject case is similar to the aforementioned cases involving large jury verdicts. Doe was a blameless victim of a disturbing assault that has left her permanently and severely injured. Anyone evaluating the evidence in this particular case would recognize that the verdict was a fair measurement of the magnitude of Doe's losses. Her body and

11

privacy were violated in an egregious way and the damages permeated every aspect of her life, including the essential activities of daily living ranging from sleeping to intimacy.

Large jury verdicts, in and of themselves, are not grounds for remittitur. There is no statutory cap on damages applicable to the claims in this lawsuit. Defendant's Motion spends considerable time speculating as to the jury's motivation for the verdict but offers no actual evidence of "passion or prejudice" by the jury. Indeed, there is no evidence to support such a contention. Rather, as this Court observed first-hand, the jurors were composed, engaged, calm, and did not show any emotion throughout the entire trial. They took copious notes, asked intelligent questions during deliberation demonstrating a desire to carefully evaluate all evidence possible in order to formulate their verdict, and followed the instructions they received.

Moreover, on July 18, 2023, at approximately 6:00 p.m., a few hours after closing arguments concluded and after the Jury had begun deliberations, the Jury advised the Court that it preferred to continue deliberations the following morning, which the Court permitted, further decimating any argument that the verdict was based on "passion."

Ultimately, Defendant's Motion for Remittitur is nothing more than a vociferous opposition to the amount of the verdict-but it offers no evidence the verdict was substantively excessive.

## Conclusion

It was clear to the Jury that Doe suffered tremendously as a result of being sexually assaulted by a Carnival employee on a Carnival cruise. Doe continues to suffer as a result of the subject rape. A dispassionate and dedicated jury carefully weighed the evidence at trial. They applied the law as instructed and awarded fair and reasonable damages supported by extraordinary evidence. There is no factual or legal basis to reduce the fair and just compensatory damages the jury awarded. The recent jury

12

10800 Biscayne Blvd. · Suite 700 · Miami, FL 33161 · Tel: (305) 579-0008 · Fax: (305) 563-7055
www.danielcourtneylaw.com · dc@danielcourtneylaw.com

verdicts cited herein, coupled with the incredible damages suffered by Plaintiff, confirm that Defendant's Motion for Remittitur should be denied.

WHEREFORE, Plaintiff respectfully requests this Court deny Carnival's Motion for Remittitur.

Dated this 20th day of January 2023.

Respectfully Submitted,

DANIEL W. COURTNEY, P.A.
10800 Biscayne Blvd
Suite 700
Miami, Florida, 33161
Telephone: (305) 579-0008
Facsimile: (305) 563-7055


By: s/ Daniel W. Courtney
Daniel W. Courtney, Esq.
Florida Bar No.: 499781

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on January 20, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generate by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      DANIEL W. COURTNEY, P.A.
      10800 Biscayne Blvd
      Suite 700
      Miami, Florida, 33161
      Telephone: (305) 579-0008
      Facsimile: (305) 563-7055

      By: s/ Daniel W. Courtney
      Daniel W. Courtney, Esq.
      Florida Bar No.: 499781

**SERVICE LIST**

| | |
|---|---|
| DANIEL W. COURTNEY, ESQ. | CURTIS J. MASE, ESQ. |
| dc@danielcourtneylaw.com | cmase@maselaw.com |
| Daniel W. Courtney, P.A. | WILLIAM SEITZ, ESQ. |
| 10800 Biscayne Blvd | Wseitz@maselaw.com |
| Suite 700 | LAUREN N. CABEZA, ESQ. |
| Miami, Florida, 33161 | lcabeza@maselaw.com |
| Telephone: (305) 579-0008 | CHARLOTTE A. ROBINSON, ESQ. |
| Facsimile: (305) 563-7055 | crobinson@maselaw.com |
| Counsel for Plaintiff | Mase Maebane & Briggs, P.A. |
| | 2601 S. Bayshore Drive, Suite 800 |
| PHILIP D. PARRISH, ESQ. | Miami, FL 33133 |
| Philip D. Parrish, P.A. | Telephone: (305) 377-3770 |
| 7301 SW 57th Court, Suite 430 | Facsimile: (305) 377-0080 |
| Miami, Florida 33143 | Counsel for Defendant |
| Telephone: 305-670-5550 | |
| Facsimile: 305-670-5552 | |
| phil@parrishappeals.com | |
| Co-Counsel for Plaintiff | |