UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-24766-Williams/Torres

JANE DOE,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE TO CARNIVAL'S MOTION FOR NEW TRIAL**

Plaintiff, JANE DOE, hereby files her Response to Defendant, CARNIVAL's Motion for New Trial (DE 329) and states:

**INTRODUCTION**

Carnival advances three arguments for a new trial: none has merit. First, CARNIVAL argues that the FBI field notes created a question of fact on Plaintiff's Motion for Partial Summary Judgment on her claim of false imprisonment. Yet CARNIVAL failed to argue that point in response to Plaintiff's Motion for Summary Judgment. CARNIVAL never mentioned the FBI **notes** at all in its Response. Thus, CARNIVAL's assertion (DE 329, p. 1) that this Court excluded the FBI's **notes** as hearsay in ruling on the Motion for Summary Judgment is demonstrably false. Likewise, demonstrably false is CARNIVAL's assertion that "with the summary judgment decision in hand, Plaintiff then made a pretrial about-face, deciding she now *wanted* to use the FBI notes in her favor." To the contrary, the parties stipulated to the use of the FBI notes – both Plaintiff and Defendant.

Instead, CARNIVAL relied solely upon hearsay from the FBI **reports** to defend the Motion for Summary Judgment. That hearsay was CARNIVAL crewmember Fredy Anggara's statements,

1

as transcribed by an FBI agent.  Magistrate Torres correctly and easily ruled that Fredy's hearsay

statements were inadmissible hearsay and which could not be reduced to admissible form at trial

because CARNIVAL had stated that Mr. Anggara would not and could not attend trial.  (DE 151).

This Court correctly approved and adopted Magistrate Judge Torres' recommendation to grant the

Plaintiff's Motion for Summary Judgment on her claim of false imprisonment.

Second, CARNIVAL argues that the FBI reports' investigative conclusions – specifically

that the FBI declined to prosecute – were admissible, and that the Court abused its discretion by

excluding those reports.  Once again, CARNIVAL is wrong.  As this Court concluded, the FBI

agents were aboard the vessel for a mere three hours, and the conclusions they drew were with

respect to whether a criminal proceeding should be instituted.  Because criminal proceedings have

an entirely different standard of care than this tort action, this Court correctly conducted a Rule

403 analysis and properly ruled that introducing the FBI reports' conclusions would have

minimum probative value and would unfairly prejudice the Plaintiff.

Finally, CARNIVAL argues that it is entitled to a new trial because this Court denied a

mitigation of damages instruction as to psychological counseling.  First, CARNIVAL did not carry

its burden to establish the failure to mitigate.  Second, the Court repeatedly asked CARNIVAL to

provide the Court with any case authority, or even a proposed written jury instruction concerning

mitigation of damages related to failure to obtain more or better psychological counseling.

CARNIVAL never did so.

## **LEGAL STANDARD**

The remedy of granting a motion for new trial is sparingly used.  *Johnson v. Spencer Press

of Maine, Inc.*, 364 F.3d 368, 375 (1st Cir. 2004).  New trials should not be granted on evidentiary

grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of

the evidence. *Tucker v. House Auth. Of Birmingham Dist.*, 229 F.App'x 820, 826 (11th Cir. 2007).

*See Doe v. School Board of Miami-Dade Florida*, __ F.Supp. __, 2022 WL 3973881 at *1 (S.D.

Fla. 2022) (citing *Quevedo v. Iberia Lineas Aereas De Espana Sociedad Anonima Operadora Co.*,

811 F.App'x 559, 562 (11th Cir. 2020)).  Furthermore, "not every evidentiary error . . . requires

reversal." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004).  A new

trial is warranted only where an error in admitting or excluding evidence "has caused substantial

prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial

rights' or resulted in 'substantial injustice')."  *Id.  See also* Fed.R.Civ.P. 61 ("Unless justice

requires otherwise, no error in admitting or excluding evidence – or any other error by the court or

a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying,

or otherwise disturbing a judgment or order.  At every stage of the proceeding, the court must

disregard all errors and defects that do not affect any party's substantial rights.")

I. **CARNIVAL Improperly Conflates the FBI Field Notes with the FBI Reports. It's Current Argument That the Field Notes Created a Question Of Fact On Plaintiff's Motion For Summary Judgment Was Never Raised In Opposition To Plaintiff's Motion For Summary Judgment.  In Fact, It Was Not Raised Until Sunday, July 17, 2022, Just 24 Hours Before Closing Arguments.**

A. **There Was No About-Face or Whipsaw on the Part of the Plaintiff**

This portion of CARNIVAL's Motion for New Trial is predicated on a false history of this

action.  The following chronology establishes that CARNIVAL never raised the FBI notes in

response Plaintiff's Motion for Summary Judgment, and both parties stipulated to the use of the

FBI notes with full knowledge of the summary judgment ruling.

1. On 3/9/21, Doe filed Motion for Partial Summary Judgment on Count V of

Complaint: False Imprisonment.  [D.E. 92].

2.      Importantly, back then, Carnival had available to it every piece of evidence, including the FBI notes that were admitted at trial.

3.      On 4/1/21, Carnival filed Response to Plaintiff's Motion for Partial Summary Judgment.  [D.E. 112].  Carnival did not reference the FBI Notes in an effort to defend the Motion for Summary Judgment.

4.      On 5/11/21, just two (2) months before Calendar Call, Doe listed on her Exhibit List the FBI Notes.  [D.E. 131-1].  **Carnival objected** to Doe being able to use them on the grounds of hearsay and admissibility.  *Id*. at 5. Though Carnival listed over fifty (50) exhibits in its Exhibit List, it **did not** list FBI Notes.  [D.E. 131-2].  **Carnival notified the Court that  Anggara would testify live** and it anticipated his direct would last two (2) hours and cross  would  last  two  (2)  hours.    [D.E.  131-3].    Despite  Carnival's representations, it failed to submit an affidavit from Anggara in opposition to the Motion for Summary Judgment.

5.      On 6/25/21, Magistrate Judge Torres issued a Report and Recommendation granting Plaintiff's Motion for Partial Summary Judgment.  [D.E. 151].

6.      On  7/2/**21**,  Carnival  filed  Carnival's  Objection  to  Report  and Recommendation.  [D.E. 153].  Carnival did not reference the FBI Notes in its Objection.

7.      On 5/31/**22**, this Court adopted the Report and Recommendation.  [D.E. 197].

8.      On 6/2/22, following agreement of the parties, Amended Exhibit List was filed.  The FBI Notes were specifically referenced as a Joint Exhibit.  [D.E.

201-1 at 3].

9.     On 6/13/22, following agreement of the parties, Final Joint Exhibit List was filed.  The FBI Notes were specifically referenced.  [D.E. 212 at 3].

10.    On 6/13/22, Carnival filed Motion for Reconsideration.   [D.E. 214]. Carnival did not use the FBI Notes in support of its Motion for Reconsideration.

11.    On 6/17/22, the parties agreed to the language for the proposed jury instruction regarding the finding the Court made as to false imprisonment. [D.E. 235 at 18].

12.    On 6/20/22, Carnival filed a Notice of Supplemental Authority regarding introducing their proposed FBI exhibits.  No mention of FBI Notes.  [D.E. 244].

13.    On 6/21/22, the Court denied Carnival's Motion for Reconsideration.  [D.E. 249].

14.    Carnival did not raise the FBI Notes as a basis at any pretrial hearing.

15.    On 7/11/22, during Carnival's opening statement, Carnival stated: "You will have in evidence the notes from the FBI and the investigation they conducted." (*See* Trial Tr. July 11, 2022 at 128:5-6).  Carnival did not move for reconsideration that day or at any point before the end of the first week of trial.

16.    On 7/14/22, after the testimony concluded for the day, the Court went over the final jury instructions with the parties.  (*See* Trial Tr., July 14, 2022 at 71:22-24).   Discussion was had regarding the false imprisonment

instruction.   Doe wanted to change the instruction to ensure the jury understood that the Court decided the false imprisonment issue before trial. <u>Carnival interrupted Doe and stated: "That's fine."</u>  **At the jury charge conference, after completion of the fourth day of trial, after the FBI notes had been referenced at trial, the parties correctly proceeded as if the Court already decided the false imprisonment issue**.

### B.     The FBI Notes Were Not "Newly Discovered Evidence"

CARNIVAL argues primarily that this Court should have granted its Motion for Reconsideration of the Partial Summary Judgment granted in favor of the Plaintiff on her claim of false imprisonment due to "the availability of new evidence."  (DE 329, p. 10-12).  However, the law in this circuit is that in the summary judgment context, the movant must show that the new evidence was unavailable at the time that summary judgment was granted.  *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021) (citing *Mayz v. US Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997) ("Where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the Court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.")).  For this reason, in addition to the fact that it is a Fifth Circuit decision, CARNIVAL's reliance on *In re Louisiana Crawfish Producers*, 852 F.3d 456 (5th Cir. 2017) is misplaced.  Moreover, CARNIVAL misrepresents the holding in that case.  First, that case involved summary judgment granted to two defendants on the basis that there was no evidence that they were involved in dredging, a necessary prerequisite to support the plaintiff's maritime tort claims.  The facts in that case are much different than the facts here.  In that case, the dispositive motion deadlines and briefing schedules were

completed prior to the date the plaintiff took the corporate representative deposition of Southern Natural, whose corporate representative admitted to facts which supported a finding that it was involved in dredging.  In addition, Southern Natural responded to requests for admissions that were sent out by the plaintiffs long after the dispositive motion deadline, admitting that they were involved in dredging.

When the district court, having no evidence from the plaintiff that Southern Natural was involved in dredging, naturally granted the motion for summary judgment, the plaintiff filed a motion for reconsideration, pointing out that notwithstanding due diligence, it had been unable to take the deposition of the Southern Natural corporate representative until after the briefing deadline, and had assumed that it would be provided an opportunity to supplement its prior briefing.  Under those specific circumstances, the Fifth Circuit agreed that the evidence was newly discovered.

However, CARNIVAL misrepresents the procedural context of that case (DE 329, p. 17) by stating "when that key fact *came in at trial,* reconsideration was required to ensure a decision based on '*all* the facts.'"  (DE 329, p. 17) citing *In re Louisiana Crawfish Producers*, 852 F.3d at 468.  CARNIVAL has inserted the words "at trial," because there was **no trial** prior to the appeal in *In re Louisiana Crawfish Producers*, which was an appeal from a summary judgment.  Thus, the court merely held that the district court needed to have all of the facts necessary to render a decision *on the summary judgment*, not that reconsideration should be granted during the course of a trial, let alone the last day of trial.

CARNIVAL's attempts to compare this case to *In re Louisiana Crawfish Producers, supra*, fall short.  Unlike the *Crawfish* case, where the evidence to defeat the summary judgment was not, even with due diligence, available until *after* the motion for summary judgment had been granted,

the evidence which CARNIVAL (incorrectly) claims creates a question of fact here – the FBI notes, as opposed to the FBI reports – was at all times available to CARNIVAL to file in opposition to Plaintiff's Motion for Summary Judgment. Regardless, the FBI notes suffered from the same hearsay problem as the FBI reports, and Magistrate Judge Torres would no doubt have refused to consider the notes had they been filed in opposition to Plaintiff's Motion for Summary Judgment. Indeed, even in its Motion for New Trial, CARNIVAL relies heavily upon the Plaintiff's statements to the FBI agent, e.g., hearsay.

CARNIVAL also misdescribes the procedural posture and holding in *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276 (11th Cir. 2005). That case did not involve a ruling on a motion to reconsider a motion for summary judgment. Rather, it was applying the law of the case doctrine based upon a prior appeal from a summary judgment, as opposed to its then current appeal from the denial of a Rule 50 motion at trial, following an earlier remand. The Eleventh Circuit simply observed that its ruling with respect to its prior appeal was based upon a different set of facts.

Likewise, CARNIVAL misrepresents the holding in *Shelkofsky v. Broughton*, 388 F.2d 977 (5th Cir. 1968) to support its motion. In *Shelkolfsky* the Fifth Circuit reversed a district court's grant of summary judgment on behalf of the defendant, finding genuine issues of material fact in the record. *Id.* at 978. The portion of the case upon which CARNIVAL mistakenly relies simply holds that the reversal of the summary judgment does not mean that, depending upon how the trial unfolded, the court could not, under proper circumstances, grant a Rule 50(b) motion. Nothing in *Shelkofsky* supports CARNIVAL's assertion that, having determined a motion for partial summary judgment on behalf of the plaintiff and a motion for reconsideration of that ruling by the defendant, where the defendant never pointed to the evidence that it subsequently stipulated itself could come

into evidence, requires this Court to revisit the original order granting partial summary judgment. This is particularly true because, as this Court noted, CARNIVAL sprang this issue on him less than 24 hours before closing argument.  Had CARNIVAL raised this issue when it agreed to stipulate to the introduction of the notes, Plaintiff would *not* have stipulated to their introduction. (Exhibit A, Trial Tr. July 18, 2022, p. 15).

These cases, as well as the cases this Court noted during trial, *Newman v Ormond*, 456 Fed. Appx. 866 (11th Cir. 2012), and *TDN Money Systems Inc. v. Everi Payments, Inc.*, 796 Fed. Appx. 329 (9th Cir. 2019) addressed the law of the case doctrine.  As the Eleventh Circuit noted in *Newman*, "under the law of the case doctrine, both district courts and appellate courts are generally bound by a prior appellate decision in the same case."  *Id.* at 867.  Thus, the term does not accurately apply here.  There has been no appeal in this case.  Thus, the Court's ability to revisit prior rulings is constrained by the standards on motion for reconsideration which, as we discussed above, were not met here.

### C.      Plaintiff's Experts Did Not Rely Upon the FBI Agents' Conclusions

CARNIVAL grossly overstates Plaintiff's experts' reliance upon the FBI reports and notes. Contrary to CARNIVAL's assertion, it was able to cross examine Plaintiff's security expert Dr. Foster about the FBI notes and reports, **except** for the conclusions, which this Court properly ruled were hearsay, and were unfairly prejudicial under Fed.R.Evid. 403.  As usual, CARNIVAL cherry picks limited portions of the transcript, and leaves out the important part.  For instance, on page 7 of DE 329 CARNIVAL quotes a portion of the transcript which omits important information, attempting to leave the impression that it was completely foreclosed from cross examining Dr. Foster concerning the FBI reports.  This was at the point in trial where the Court had to repeatedly

remind CARNIVAL's counsel not to violate the motion in limine ruling.  That drew the following

admonition from this Court:

> Mr. Seitz, whether or not a crime occurred, I don't think I could have been any clearer that we weren't going there; and yet we seem to keep stepping up to the edge of that precipice.  Don't make me push you over, Mr. Seitz.
>
> There are already outstanding sanction motions, and today's events suggest that we need to get to that sooner than I had thought. . . .

(Exhibit B, Trial Tr. July 13, 2022, at 149:17-23).  Nevertheless, CARNIVAL persisted in arguing

that it should be able to elicit that information simply because Dr. Foster had reviewed the FBI

reports.  This Court ruled:

> He has said that he has reviewed the FBI reports.  The FBI conclusion as to whether or not there is a prosecution is not coming into evidence, period.

(Exhibit B, Trial Tr. July 13, 2022, at 151:8-10).  Then, to make certain that the Court was clear

the Court added:

> You may not bring out the fact that there was a declination of prosecution.  You may not bring out the fact that an FBI report assessed this encounter as consensual.  As I said in the previous hearing; that is for the jury to decide.
>
> You have, I believe, deliberately set up a strawman to knock down by cross examining that the expert has reviewed FBI reports and, therefore, you should be able to get into the fact that they determined it was consensual.  That is bogus, it is violative of my order, and I will not allow any further discussion.
>
> You can bring out, as I have said repeatedly, that the FBI investigated, that statements were taken, because CARNIVAL appropriately wishes to prove that it adhered to all regulations involving reporting the incident to law enforcement and allowed them access to personnel, but that is it.

(Exhibit B, Trial Tr. July 13, 2022, at 154:5-19).  Thereafter, CARNIVAL moved for a mistrial

which this Court denied.  (*Id.* at p. 157).

But CARNIVAL continued even after the Court ordered CARNIVAL to stop.

CARNIVAL continued this pursuit of trying to get FBI reports into the case by berating Dr. Cheri

Surloff for eight (8) minutes regarding a certain quote that came from a document that was **not** found in a report, but that was referenced in her expert report.  CARNIVAL kept pushing and asked Dr. Surloff to read from an FBI report that had a different quote.  Dr. Surloff said she had never seen that FBI report before.  Other than her own expert witness report, the only document CARNIVAL gave Dr. Surloff to try to refresh her recollection was an FBI report that the Court ruled was inadmissible.  (Exhibit C, Trial Tr. July 15, 2022, 86:10–91:14).

> **D.    This Court Properly Exercised its Discretion to Deny CARNIVAL's Eleventh-Hour Motion for Reconsideration.**

On the last day of trial, after the parties rested, this Court announced its ruling on CARNIVAL's End-of-Trial Motion for Reconsideration, which had been filed the prior day:

> So that takes us to the motion for reconsideration on summary judgment. I have endeavored to piece together a timeline. That has been challenging enough, but here is apparently what happened.

> The plaintiff's first exhibit list included the FBI notes. That's May 11th of 2021. And the defense objected to the admission as hearsay and incomplete, whatever it was plaintiff had attached.

> Then on May 11th Carnival submits its first joint proposed jury instructions. Nowhere in those instructions is the issue of false imprisonment addressed. There was no instruction. That's in May of 2021.

> June 25th of 2021 Judge Torres entered his R and R recommending that this Court grant summary judgment as to the false imprisonment because plaintiff's testimony that Fredy Anggara held a door closed was uncontroverted. Specifically he found that the reports were inadmissible hearsay.

> In footnote 4 he discussed whether these reports could come in as a party admission if offered by plaintiff, but he made no determination. And that was in June of 2021.

> Two weeks later, on July 2nd, the parties submitted their first joint exhibit list, in which they appear to stipulate to the admission of some FBI notes for the first time. It is unclear because, of course, I didn't have a binder of any type, but there it is.

> During our February 15th status conference, I ruled that I was adopting Judge Torres's R and R, and that order was entered on May 31st of 2022. But I advised the parties in February that I would be doing that.

After the order was docketed, the parties submitted a new joint exhibit list, again indicating some agreement on FBI notes; and also for the first time giving me a jury instruction on false imprisonment.

A week later you submitted a final joint exhibit, again stipulating to the notes; and on the same day Carnival moved for reconsideration of the summary judgment. Interestingly, Carnival never cited the draft notes that were ultimately introduced into evidence; they cited only the FBI 302s in two entences on page 3 of Docket Entry 214.

Carnival did not argue that now that they had agreed to introducing these documents the landscape had altered requiring me to revisit summary judgment. And, frankly, I don't think I had your binder yet with what it is you had agreed to. You'll recall we had many conversations about the failure to indicate what exactly certain exhibits were.

But, nonetheless, the argument that is now being advanced that the admission of the notes changes what the Court has to rely on was not set forth in Carnival's motion. And as you will recall, I denied that motion. It is now being raised for the first time at the end of trial.

Mr. Courtney's argument is that he has been prejudiced because he has not designed his case around this issue, thinking it had been resolved; even though -- for reasons that remain unclear to me -- the parties agreed that the rough notes came in as a substantive matter.

I honestly don't know what it is the parties have been doing about so much in this case. But I do believe that the fact that, as is recounted in Mr. Courtney's motion, over the weekend and in conversations, we did not substantively visit this issue until Saturday or Sunday when the motion was filed by Carnival.

So I am going to in my discretion find that this, indeed, would be prejudicial to the plaintiff at this time, and I am not going to revisit the order that Judge Torres entered.

I am, however, going to modify the jury instruction. . . .

(Exhibit A, Trial Tr. July 18, 2022, p. 68-70).

This Court has limited discretion to revisit pretrial rulings.  This Court properly exercised that discretion by declining to grant CARNIVAL's tardy motion which was filed near the conclusion of a trial predicated on the Court's prior summary judgment ruling.  It is unfathomable

that CARNIVAL waited until the conclusion of the trial to raise the issue.  As this Court properly noted, changing its ruling at that juncture would have greatly prejudiced the Plaintiff's case.

II.   **The FBI Reports and Their Conclusions Were Properly Excluded Because They Contained Inadmissible Hearsay and What Limited Probative Value They Had Was Far Outweighed By the Unfairly Prejudicial Nature of Their Admission Under Fed.R.Evid. 403.**

The Eleventh Circuit reviews a district court's ruling on the admissibility of evidence under a deferential abuse of discretion standard.  *Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1483 (11th Cir. 1997).  Accordingly, the court will not overturn an evidentiary ruling unless the moving party proves a substantial prejudicial effect.  *Id.*

Moreover, even records which might under some circumstances be admissible under the public records exception to the hearsay rule may properly be excluded from evidence in a jury trial under Rule 403 where the probative value of the determination is "outweighed by the danger of creating unfair prejudice in the minds of a jury."  *Blanton v. University of Florida ex rel Bd. of Trustee of Florida,* 273 Fed.Appx. 797, 804 (11th Cir. 2008).

Whether such determinations may be admitted under Rule 403 is a decision left to the sound discretion of the district court.  *Id.*  In *Blanton*, the Eleventh Circuit exercised deference to the trial court's decision to admit an EEOC report, finding that "because the first EEOC determination concerned Blanton's discrimination claim, not the retaliation claims that were before the jury, evidence of the determination was less likely to create a danger that the jury would mistakenly view it as conclusive of any issue as to Blanton's retaliation claim."  *Id.* at *7.

Here, by contrast, this Court correctly concluded that the conclusion of that special agent Sara Andreason that this was a consensual sexual encounter, and that, after that information was relayed to a prosecutor, the prosecutor declined to prosecute, go to the central issue in this case.

Their introduction, which would have had little to no actual probative value, would have unquestionably unfairly prejudiced the plaintiff.

CARNIVAL argues that the Court could have provided a curative instruction that the criminal standard and the civil standard are different, but even curative instructions have their limits. Indeed, the United States Supreme Court has recognized that "some occurrences at trial may be too clearly prejudicial for . . . a curative instruction to mitigate their effect." *Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974). *See also Ewing v. Carnival Corp.*, 2022 WL 1719315 (S.D. Fla. 2022) (granting new trial, and determining that curative instruction was insufficient). Regardless, the mere fact that CARNIVAL argues that a curative instruction would be necessary confirms this Court's Rule 403 analysis that the introduction of the declination of prosecution would have a strong likelihood of unfairly prejudicing or confusing the jury under a 403 analysis.

The cases upon which CARNIVAL relies do not support its Motion. For instance, in *U.S. v. Sallins*, 993 F.2d 344 (3rd Cir. 1993), the court reversed and remanded for a new trial on the defendant's possession of a firearm conviction because the contents of the police radio dispatch and the police computer record were inadmissible hearsay. There, as here, there was no tenable non-hearsay purpose for offering the contents of the proffered exhibit.

Likewise, in *Miller v. Field*, 35 F.3d 1088 (6th Cir. 1994), the Sixth Circuit held that statements by the alleged victim, alleged assailants, other witnesses and the local prosecutor were hearsay within hearsay and therefore inadmissible even though contained in a police report. While the court held that the fact that the prosecutor had elected not to press charges against plaintiff's fellow inmates was admissible, the court held that the reasoning behind the prosecutor's decision not to prosecute was inadmissible hearsay:

> Obviously, these third party statements, including the "opinion" of the local prosecutor that Miller's account was not credible and could not be corroborated,

depended for their relevance on the truth of their contents, which makes them inadmissible hearsay. . . .

*Id.* at 1092.  Here, the FBI report (DE 111-4) contains the following statement:

The investigation revealed the sexual encounter was consensual at the time of the event, and declination of prosecution was received from AUSA Susan Huyler of the Middle District of Florida . . . .

(DE 111-4).  CARNIVAL sought to usurp the jury's function by introducing FBI Agent Andreason's personal opinion, and the resultant declination of prosecution for a *crime* in this civil case.

Likewise, CARNIVAL's reliance upon *Crawford v. ITW Food Equipment Group LLC*, 977 F.3d 1331 (11th Cir. 2020) is overstated.  In *Crawford* the district court exercised its discretion to permit the use of portions of certain OSHA reports to establish that the defendant had notice of the "common sense danger of an unguarded saw blade . . . ."  *Id*. at 1351.  In *Crawford*, the reports were highly probative on the issue of notice.  Also, in *Crawford* the Eleventh Circuit held that the district court did not abuse its discretion in determining that the "considerable" probative value of the OSHA reports outweighed any minimal prejudice.  *Id.* at 1351-52.

Here, the opposite is true.  This Court properly exercised its discretion to preclude the use of the FBI reports under a hearsay and 403 analyses.  Given the high burden of proof in a criminal prosecution, a prosecutor's decision not to prosecute what may have amounted to a "he said she said" sexual encounter has very little – if any – probative value to a civil jury's determination, based upon a preponderance of the evidence, as to whether the encounter was consensual. Additionally, because the danger that the imprimatur of the Government's declination of prosecution could have upon a civil jury, even one which has been provided a curative instruction, is great, this Court did not abuse its discretion in ruling the FBI reports to be inadmissible under Fed.R.Evid. 403.

III.    **CARNIVAL Failed to Carry its Burden to Establish a Mitigation of Damages Affirmative Defense and Never Presented an Appropriate Instruction to this Court for Mitigation of Damages with Respect to Pursuing Psychological Care.**

First and foremost, mitigation of damages is an affirmative defense for which the Defendant, CARNIVAL, bears the burden of proof.  *See Munoz v. Disney Destinations, Inc.*, 223 F.3d 1340, 1347 (11th Cir. 2000); *Nord v. U.S. Steel*, 758 F.2d 1462, 1470-71 (11th Cir. 1985). *See also, Garcia v. Walmart Stores, Inc.*, 2009 F.3d 1170, 1174 (10th Cir. 2000)[1] (finding no error in failing to give mitigation of damages instruction regarding plaintiff's failure to obtain psychological counseling where defendant did not prove that there had been a failure to mitigate). In this case CARNIVAL failed to elicit evidence of failure to treat or mitigate.  CARNIVAL never put on a defense expert to opine that the Plaintiff's alleged failure to treat constituted a failure to mitigate, nor did CARNIVAL ask Plaintiff's psychologist Dr. Surloff about Plaintiff's alleged failure to treat.

Far from proving that the Plaintiff failed to mitigate any damages, the evidence displayed that CARNIVAL refused to provide the Plaintiff with her own medical records, including a note from the ship's doctor to "[p]erform HIV antibody testing during the original assessment and again at 6 weeks, 3 months, and 6 months after the assault" and to **"[f]ollow up with mental health services for counseling**."  (Exhibit D, Joint Exhibit 2-7, p. 8 of 17) (emphasis added).  Indeed, CARNIVAL's counsel admitted during closing argument that "I'm the first one to stand here before you and say they should have given her her medical records . . . ."  (Exhibit A, July 18, 2022 transcript, p. 119).  The Plaintiff confirmed in her trial testimony that she was never provided

---

[1] *Garcia* was abrogated on other grounds, as recognized in *Stender v. Archstone-Smith Oper. Trust*, 958 F.3d 938, 948-49 (10th Cir. 2020).  The abrogation had to do with an award of costs.

her medical records or a copy of her four page statement or the retraction of allegation form. (Exhibit C, Trial Tr. July 15, 2022, p. 210).  She was unaware that any type of follow up medical or psychological care had been recommended by the ship's physician.  (Exhibit C, Trial Tr. July 15, 2022, p. 211).

During CARNIVAL's cross examination the Plaintiff asked if she could explain why she had not seen a mental health therapist prior to December 2019, but CARNIVAL's counsel would not allow her to do so.  (Exhibit C, Trial Tr. July 15, 2022, p. 249-250).  However, CARNIVAL's own Exhibit 8-2 (Exhibit E) (at p. 3 of 19) which are the Plaintiff's medical records from Kaiser Permanente, confirm that "she has been trying to find a therapist and has called at least 20 and haven't [sic] gotten a call back.  Last summer, she went to a crisis center."

Further, the Plaintiff did treat with a therapist through an application called Better Health including Zoom appointments, which she did for the whole year of 2020.  (Exhibit C, Trial Tr. July 15, 2022, p. 224-225).  She was doing well with one therapist named Jennifer until Jennifer "had her own mental thing that she had to take care of, and so I had to switch to a different therapist." (*Id.* at p. 225).  She has also sought therapy with other therapist, one named Allison, and had recently started with another therapist named Michelle Fowler.  (*Id.* at p. 225).  She estimated that she had spent 3 to 4 thousand dollars personally on therapy.  (*Id.* at 226).  One of the purposes of this lawsuit was to recover compensation to seek such therapy.

Accordingly, under the facts of this case CARNIVAL was not entitled to a mitigation of damages instruction for failure to seek psychological care.  CARNIVAL failed to provide any expert or lay testimony that any delay in seeking treatment negatively impacted Plaintiff's mental recovery.  In short, CARNIVAL failed to establish its burden of proof on that defense.

The Eleventh Circuit reviews a district court's rejection of a proposed jury instruction for an abuse of discretion. *Fidelity Interior Const. Inc. v. Southeastern Carpenters Regional Council*, 675 F.3d at 1250, 1259 (11th Cir. 2012) (citing *United States v. Webb*, 655 F.3d 1238 (11th Cir. 2011). The Eleventh Circuit will reverse the district court's refusal to incorporate a requested jury instruction only if the instruction was (1) substantially correct, (2) the requested instruction was not addressed in the charges actually given, and (3) failure to give the instruction seriously impaired the requesting party's ability to present an effective case. *Id.*

Nevertheless, a district court does not abuse its discretion by refusing to give a requested jury instruction that is an incomplete statement of the law or that would confuse the jury. *United States v. Waters*, 937 F.3d 1344, 1353 (11th Cir. 2019). *See also United States v. Silverman*, 745 F.2d 1386, 1396 (11th Cir. 1984) (noting that a district court "is bound to refuse a requested instruction that is incomplete, erroneous, or misleading").

CARNIVAL claims that it requested a jury instruction based on the Plaintiff's failure to mitigate her damages by not following her doctor's instruction to obtain treatment for her claims of psychological injuries, referencing DE No. 241.  (DE 329, p. 31 of 36).  DE No. 241 was the parties' joint proposed jury instructions.  The parties presented as proposed instruction number 17 a jury instruction entitled "Negligence General Instruction" that was 3 pages long, and appears to be a slightly modified version of U.S. Eleventh Circuit 2013 Pattern Jury Instructions – Instruction 8.1.  (DE 241, p. 24).  That instruction was drafted for Jones Act claims, but was apparently modified to adapt to a passenger claim.  (DE 241, p. 24).  That instruction does not mention failure to seek treatment for psychological injuries whatsoever.  The portion of the instruction applicable here states:

> You are instructed that any person who claims damages as a result
> of an alleged wrongful act on the part of another has a duty under

> the law to "mitigate" those damages – that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.  So, if you should find from a preponderance of the evidence that the Plaintiff failed to seek out or take advantage of <u>a business or employment opportunity</u> *an opportunity* that was reasonably available under all the circumstances shown by the evidence, then you should reduce the amount of the Plaintiff's damages by the amount that could have been reasonably realized if the Plaintiff had taken advantage of such opportunity.

(DE 241, p. 24).

The underlined language appears in the pattern jury instruction 8.1, as requested by Plaintiff.  The italicized portion was requested by CARNIVAL.  At the pretrial charge conference, CARNIVAL argued that the instruction should not be limited to business or employment opportunities, and suggested that the instruction be changed to "an opportunity.":

> The Court:     Let's talk about the way in which the jury is to assess damages.  It appears you have agreed to everything up to page 24 – midway through that paragraph as to mitigation and failure to take advantage . . . the Plaintiff says to take advantage of a business or employment opportunity and Carnival says an opportunity.
>
> What is the thinking behind that distinction?
>
> Mr. Mase:     I believe that it is too restrictive as phrased.  And I think that the evidence will support that the Plaintiff failed to take advantage of all opportunities to get care post incident that she could or should have.
>
> The Court:     That is interesting.  The Eleventh Circuit sent me a little love note about using a mitigation instruction in a contract case.
>
> And reference to how – despite the encouragement of the lawyers – that it wasn't appropriate.  So its important if the jury is being asked to mitigate that it is clear what are you talking about.
>
> Mr. Mase:     Your Honor, I'm talking about a failure to seek recommended medical slash psychological care.
>
> The Court:     Which case in the cases listed supports the theory that a mitigation instruction would be appropriate for that type of damage?

Mr. Mase:      Your Honor, I will find the case that says that.

The Court:     Having just heard from the Eleventh, Mr. Mase, I'm going to want to see some authority.

Mr. Mase:      I will find that authority.

(Exhibit F, July 7, 2022 transcript, page 35-36).

Thus, the only jury instruction that was ever presented to the court was jury instruction number 17 in the Joint Proposed Jury Instructions. That instruction, taken from the Eleventh Circuit Pattern Instructions for a Jones Act claim (which typically involve a personal injury) limited the mitigation of damages instruction to "business opportunities." CARNIVAL objected to that instruction – which the Plaintiff had agreed could be given -- and its only suggested change was to drop the word "business" and utilize only the word "opportunity." As stated, the instruction would have been an incomplete statement of the law and would have been misleading to the jury. Thereafter, CARNIVAL never provided to the Court a proposed written jury instruction on mitigation of damages for failing to seek earlier or better psychological counseling. It is not the duty of the trial court to rewrite the jury instructions for either party.

The issue next arose during the trial on July 14, 2022 (Exhibit G, p. 77) where CARNIVAL cited *Rubenstein v. Yehuda*, 38 F.4th 982 (11th Cir. 2022), which was the very case that this Court had referenced in the prior transcript because the Eleventh Circuit had reversed this Court for *giving* a mitigation instruction, in that case involving assignment of an interest in an LLC that owned a hotel. However, CARNIVAL never brought to this Court's attention, as it does in its Motion for New Trial, the "paradigmatic" example cited by the Eleventh Circuit with respect to a plaintiff's failure to mitigate the effects of a broken leg by failing to obtain proper medical care after the accident. That was a hypothetical example from *Ridley v. Safety Kleen Corp.*, 693 So.2d 934, 942 (Fla. 1996), referencing an example taken from a treatise on torts. Had CARNIVAL

brought that hypothetical example to this Court's attention, perhaps this Court would have provided a mitigation instruction under the circumstances.  However, a party's failure to seek medical care for a broken leg – literally a flesh and bone injury – is much more easily understood as a failure to mitigate than is a party's alleged failure to seek *more* or *better* counseling for psychological injury, particularly when CARNIVAL never presented any evidence about what else could or should have been done, and whether it would have made any difference, let alone whether the Plaintiff could afford to seek more or better care.

Nor does it appear that CARNIVAL did anything other than cite the name of *Rubenstein v. Yehuda* to the Court on July 14.  For instance, there is no reflection that the case was handed to the Court to read in depth.  In fact, this Court asked CARNIVAL's counsel if it was aware of any other case involving CARNIVAL or any passenger – not even necessarily a sexual assault case where the issue of emotional damages had been raised in mitigation was asserted as to the emotional damage claim.  The following morning, CARNIVAL presented the jury instruction that was given in the case of *J.G. v Carnival*, a case where a mitigation of damages instruction was provided.  (Exhibit C, Trial Tr. July 15, 2022, p. 4).  On the next trial date, July 18, 2022 the Court noted that the instruction from *J.G. v. Carnival* addressed employment, not psychological damages.  (Exhibit A, Trial Tr. July 18, 2022, p. 18-19).  Accordingly, this court concluded "I've seen nothing about mitigation as to emotional distress, and I won't give that instruction," referring to the employment opportunity instruction from *J.G. v. Carnival*.  (*Id.*, p. 19).

The Eleventh Circuit Pattern Jury Instruction on personal injury (Jones Act) claims includes a mitigation of damages instruction directed solely to "business opportunities." CARNIVAL has not cited a single case to this Court to establish that its orally proposed instruction represents an accurate statement of the law or failure to give the instruction seriously impaired

CARNIVAL's ability to present its case.  Thus, CARNIVAL is not entitled to the instruction it sought under Eleventh Circuit authority.

<u>**CONCLUSION**</u>

Again, none of CARNIVAL's arguments have merit.  This Court should deny CARNIVAL's Motion for New Trial.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on January 20, 2023.  I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

**Philip D. Parrish, P.A.**
***Co-counsel for Plaintiff***
7301 SW 57th Court, Suite 430
Miami, Florida 33143
Tel. 305-670-5550/Fax: 305 670-5552
Email: phil@parrishappeals.com
      betty@parrishappeals.com

By:  ***/s/ Philip D. Parrish***
      Philip D. Parrish
      Florida Bar No. 541877

## **SERVICE LIST**

Daniel W. Courtney, Esq.
Daniel W. Courtney, P.A.
***Counsel for Plaintiff***
10800 Biscayne Blvd., Suite 700
Miami, FL  33161
Tel. 305-579-0008
dc@danielcourtneylaw.com

Curtis J. Mase, Esq.
Lauren N. Cabeza, Esq.
Tyler J. Rauh, Esq.
William R. Seitz, Esq.
Mase Seitz, P.A.
***Counsel for Defendant***
SBS Tower
2601 S. Bayshore Drive
Suite 800
Miami, FL  33133
Tel. 305-377-3770
Fax 305-377-0080
cmase@maselaw.com
lcabeza@maselaw.com
trauh@maselaw.com
wseitz@maselaw.com

Lauren A. Levitt, Esq.
Mase Seitz, P.A.
***Counsel for Defendant***
11870 SW 94 Street
Miami, FL  33186
Tel. 305-409-9805
LLevitt@maselaw.com