# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.:   19-cv-24766-WILLIAMS/TORRES

JANE DOE,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

## DEFENDANT CARNIVAL CORPORATION'S REPLY
## IN SUPPORT OF MOTION FOR NEW TRIAL

    MASE MEBANE SEITZ, P.A.
    *Attorneys for Defendant*
    2601 South Bayshore Drive, Suite 800
    Miami, Florida 33133
    Telephone: (305) 377-3770
    Facsimile: (305) 377-0080

    By:   */s/ Curtis J. Mase*
        CURTIS J. MASE
        Florida Bar No. 478083
        cmase@maselaw.com
        WILLIAM R. SEITZ
        Florida Bar No. 73928
        wseitz@maselaw.com

Dated:  January 27, 2023

## INTRODUCTION

Carnival's opening submission detailed various errors that caused substantial prejudice at trial. First was the failure to reconsider summary judgment despite the late-breaking admission of the FBI Notes—evidence creating material fact issues. That led to the jury being instructed that Plaintiff had been falsely imprisoned, which naturally pointed toward liability on the sexual assault claim. The second significant error was the exclusion of the FBI Reports at trial, despite Plaintiff's experts' reliance on them in forming their opinions. Instead, the jury was told merely that the FBI was involved—but not what determination it reached. These errors call for a new trial.[1]

Plaintiff's opposition largely fails to confront Carnival's arguments in support of its request for new trial; instead, it attempts to distract from them. That speaks volumes.

## ARGUMENT

### I. FAILURE TO RECONSIDER SUMMARY JUDGMENT WAS LEGAL ERROR.

Carnival presented three reasons why this Court's failure to reconsider summary judgment was legal error. Plaintiff pokes irrelevant holes in the first, merely echoes this Court's conclusions as to the second, and does not devote a single sentence to the third.

**A. The FBI Notes Created a Dispute of Material Fact.**

Plaintiff does not contest that admission of the FBI Notes created a dispute of material fact. Instead, Plaintiff accuses Carnival of presenting a skewed narrative of the events that led to the denial of reconsideration. But Plaintiff neither explains what Carnival said that was inaccurate, nor disputes any of the procedural history relevant to Carnival's motion. On that, only three events matter: [1] Judge Torres' finding that there was no dispute of fact at summary judgment, [ECF 151

---

[1] Plaintiff does not dispute that the jury's finding for Carnival on Plaintiff's negligence claim did not turn on whether Plaintiff consented to the interaction, meaning that this Court can limit its grant of a new trial to those claims affected by the summary judgment and evidentiary errors bearing on consent—the false imprisonment and sexual assault claims. *See* Mot. 10 n.1.

1

at 10]; [2] the admission of the FBI Notes at trial, [Trial Tr. Day 3 at 4:2-4; ECF No. 212 at 3; JE 26], and [3] this Court's acknowledgement following admission of the Notes that the Notes created "an issue of fact which was not present" at summary judgment, [Trial Tr. Day 6 at 18:2-4].

Plaintiff now suggests the Notes were "available" at summary judgment and implies Carnival could have introduced them at any point prior to Plaintiff's late-breaking stipulation. Opp. 4-6. That is incorrect. To start, Judge Torres unequivocally determined that the FBI Reports, which Carnival did attempt to rely on at summary judgment, *see* [ECF No. 112 at 3], were hearsay. The Notes formed the basis for those Reports.[2] This Court in turn "advised repeatedly" that the Notes "would not be admitted." [Trial Tr. Day 6 at 12:9-11]. It would have been rash to introduce the Notes under those circumstances, not to mention futile at that stage, given the Magistrate's ruling. And it is the ability to actually *introduce* something into evidence, not merely *access* to it, that allows for reconsideration. *See Luig v. N. Bay Enterprises, Inc.*, 817 F.3d 901, 907 (5th Cir. 2016) (granting reconsideration even though defendant "likely had access to the evidence presented in the 59(e) motion" at summary judgment but failed to present it). The landscape changed only when this Court admitted the parties' Joint Exhibits into evidence at trial. [Trial Tr. Day 3 at 4:2-4]. Carnival renewed its motion for reconsideration days later. Mot. 13 n.2.

Plaintiff next cites various cases about the barriers to parties attempting to introduce newly discovered evidence. Opp. 6. This misses the mark. Carnival is not "attempt[ing] to introduce previously unsubmitted evidence." *See Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997). The Notes came in on Plaintiff's stipulation. Carnival's argument concerns a different point: the legal consequence of evidence coming in at trial that the Court did not consider at summary judgment. On that, Plaintiff does not meaningfully dispute that reconsideration is

---

[2] The Reports themselves come within the public-record exception. *See infra* 6-7.

2

appropriate when evidence becomes available after summary judgment. *See Sanzone v. Hartford Life & Accident Ins. Co.*, 519 F. Supp. 2d 1250, 1255 (S.D. Fla. 2007).

Plaintiff then faults Carnival for failing to cite a case with perfect factual symmetry to this one. Opp. 6-9. Her argument boils down to the following: Various cases discuss reconsideration when evidence comes in on a party's *pre-trial* motion, but not when it comes in on a party's *trial* stipulation. But no case on which Carnival relies turns on that distinction, and each one indicates reconsideration is appropriate here. Take *In re Louisiana Crawfish Producers*: The Fifth Circuit ordered reconsideration because evidence entered the record—*after* summary judgment—and that created a dispute of fact. 852 F.3d 456, 467 (5th Cir. 2017). No part of the opinion cuts reconsideration off at the start of trial. And conveniently, Plaintiff does not mention the cases where courts reconsidered judgments *post*-trial. *See, e.g.*, *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). Cases like *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276 (11th Cir. 2005), applying the law of the case doctrine, stand for a separate but equally pertinent point: "When the record changes" to contain "substantially different evidence," a court is free to depart from prior judgments in the same case. *Id.* at 1283. The bottom line is the same: When a dispute of fact emerges, a court should revisit summary judgment.

**B. Summary Judgment Substantially Prejudiced Carnival.**

Plaintiff describes the question of consent as "the central issue in this case." Opp. 13. Carnival agrees. And Plaintiff does not contest that the Court's grant of summary judgment prejudiced "the jury towards a finding of liability from the trial's outset," Mot. 14, or that the denial of reconsideration "rendered Carnival unable to fairly defend against Plaintiff's sexual assault claim," *id.* at 15-16. Instead, Plaintiff echoes the Court's prior observation that she may have been prejudiced by reconsideration. Opp. 11-12. But she fails to explain why "call[ing] additional

3

witnesses"—as this Court suggested—would not have resolved gaps in the design of her case. Mot. 19.  And the jury would have been none the wiser.

Plaintiff also argues in passing that there was no "Whipsaw" on her part.  Opp. 1, 3.  But recall Plaintiff's explanation for stipulating to the Notes' admission at trial: they came in only "in reliance that *I already have the false imprisonment claim*."  [Trial Tr. Day 6 at 15:5–8] (emphasis added).  Because Plaintiff "ha[d that] claim," she also "had" a finding of lack of consent to imprisonment.  *See* [ECF No. 151 at 5] (discussing elements of false-imprisonment claim).  And so only one conclusion remained available to the jury on the sexual assault claim: liability.

### C. A Dispute Over Credibility Existed at Summary Judgment and Deepened at Trial.

Plaintiff's account at summary judgment displayed multiple memory lapses—any of which was sufficient to "create an issue of credibility" for the jury.  *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986).  This deepened at trial when she could not testify to several basic facts about the encounter.  *See* Mot. 23.  But this Court's grant of summary judgment credited her account *in full*.  Plaintiff says not one word in response to this.  Reconsideration is warranted because credibility and consent should have been before the jury.

## II.  EXCLUDING THE FBI REPORTS AT TRIAL WAS ERROR.

The FBI Reports were admissible, at a minimum, so that Carnival could impeach Plaintiff's experts after they relied on the Reports.  Plaintiff reasons that because her experts "did not rely upon the FBI Agents' conclusions," it was appropriate for the Court to exclude the FBI Reports at trial.  Opp. 9.  There are three things wrong with that reasoning.

*First*, it is not true that Carnival was precluded from cross-examining her experts only as to the FBI's *conclusions*.  Dr. Surloff testified that she did not know what documents she relied on in forming her opinion.  She thus was not subject to cross-examination as to her reliance on the FBI Reports *at all*.  What's more, the record makes clear that Dr. Surloff did, in fact, rely on—and

4

at times quoted verbatim from—the FBI Reports. Dr. Surloff admitted at trial that portions of the "Relevant History" section of her report were exact quotes from reports and documents she had been given to review in forming her expert opinion, but she could not recall which documents. The record shows that the documents she relied on, but failed to recall or bring to trial, were *the FBI Reports*. *Compare* [FBI Report, ECF No. 111-2 at 3] *with* [Surloff Report, ECF No. 329-1 at 2-3] (evidencing that portions of Dr. Surloff's "Relevant History" section of her report includes direct quotes lifted from the FBI Report), *with* [Trial Tr. Day 5 at 88:22-90:9].

Plaintiff thus was able to enjoy the benefits of the rules of evidence, without shouldering their corresponding burdens. Mot. 19. Carnival had a right to have the FBI Reports admitted—even if just for impeachment—once Plaintiff made the strategic decision to have Dr. Surloff rely on them. Fed. R. Evid. 705. Dr. Surloff instead was able to rely on the FBI Reports to impermissibly bolster Plaintiff's testimony by clipping quotes from the FBI Reports—which ultimately came to the opposite conclusion as did Dr. Surloff on the most important element of the case: consent. Mot. 20. The jury should have been able to decide for itself whether Plaintiff's experts were credible in reaching a finding of non-consent when relying (sometimes verbatim) on portions of the FBI Report—while rejecting the unhelpful portions. But Plaintiff's experts were never subject to cross-examination on that.

Plaintiff's counter is a weak one. Rather than grapple with the prejudice Carnival endured, Plaintiff takes issue with Carnival's "pursuit of trying to get FBI reports into the case." Opp. 10. Plaintiff contends that Dr. Surloff's Report and the FBI Reports have "different quote[s]", and that Dr. Surloff had not seen the report. Opp. 11. But even a cursory review shows Dr. Surloff did directly quote from the FBI Reports. Plaintiff cannot seriously dispute this.

*Second*, note what was *not* said.  Plaintiff does not respond to Carnival's detailing of her Rule 26 violations.  Mot. 18-21.  Plaintiff carefully does not argue that it would have been permissible for the Court to preclude Carnival from cross-examining her experts on the FBI Reports where the experts relied on them.  Plaintiff's argument instead is that her experts did not rely on the *conclusions*, and Carnival was precluded only from eliciting testimony on the *conclusions*.  Plaintiff says Carnival was able to cross-examine Dr. Foster about portions of the FBI Reports and Notes, but just not about the conclusions.  Opp. 9.  She did not—and, of course, cannot—say that about Carnival's cross-examination of Dr. Surloff.  *See supra* 4-5.  Plaintiff, in effect, concedes that her experts relied on the FBI Reports, at least in part.  In doing so, she admits a Rule 26 violation, because nowhere in her expert disclosures was it revealed that her experts relied on the FBI Reports.  That was not harmless and it rendered the trial fundamentally unfair.

*Third* and finally, it should not matter whether the experts relied on the FBI Reports' conclusions.  The conclusions themselves were admissible under Federal Rule of Evidence 803(8).  Mot. 21-25; *Goodman v. Kimbrough*, 718 F.3d 1325, 1333 n.2 (11th Cir. 2013).

Plaintiff admits the analysis here is properly done statement-by-statement, and that a decision not to prosecute, per *Miller v. Field*, 35 F.3d 1088 (6th Cir. 1994), is admissible.  Opp. 14.  But Plaintiff then attempts to distinguish *Miller* by arguing that the ultimate investigative conclusion there was admissible while the reasoning for the conclusion was not, whereas here the FBI Reports contained reasoning for the Reports' conclusions and so were entirely inadmissible.  *Id.*  But that is not what *Miller* said.  *Miller* instead supports the proposition that the ultimate conclusion of the investigation, at a minimum, should be admitted; any inadmissible statements can be redacted.  35 F.3d at 1089, 1091.  And Carnival suggested to the Court the option of admitting just the Reports' conclusions that the interaction was consensual; it also argued that,

6

at a minimum, the jury should "hear that there was no criminal prosecution." [ECF No. 128 at 1]. The Court still excluded the Reports in their entirety. As *Miller* highlights, that was wrong.

Plaintiff (at 13-14) next attempts to distinguish *Blanton*, discussed in Carnival's motion at 24, by highlighting that the EEOC proceeding and jury trial there pertained to two different, albeit related, claims. *Blanton v. Univ. of Fla. ex rel Bd. of Trs. of Univ. of Fla.*, 273 F. App'x 797, 804 (11th Cir. 2008). But the principle in *Blanton* was drawn from clear Eleventh Circuit precedent reasoning that, in admitting a public record like an EEOC report, a limiting instruction and sufficient evidence can explain to the jury the "appropriate use of the [prior] determination by explaining that it is not an adjudication of rights and liabilities" binding on any party, even when the EEOC report "concerns the same discrimination claim as that before the jury." *Id.* (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1288, 1289 (11th Cir. 2008)). This principle highlights the role a limiting instruction could have played here.[3]

At bottom, the exclusion of the FBI Reports caused Carnival substantial prejudice. The Report was not a summary of a "he said she said" investigation. Opp. 15. The FBI made an *affirmative finding* that the interaction was, in fact, consensual. It is hard to understand why that conclusion—reached by a government agency with specialized investigatory expertise—was not highly probative evidence warranting admission. This is especially true considering that once the FBI Notes came into evidence, the jury knew there was an FBI investigation, but was never informed of that investigation's conclusion; instead, it was left to draw its own conclusions, knowing that summary judgment had been granted on false imprisonment and that there'd been an FBI inquiry. Mot. 24. No surprise, then, when the jury returned a finding of liability.

---

[3] Plaintiff argues that by suggesting that a limiting instruction could have been appropriate, Carnival concedes that there was a "strong likelihood" of prejudice in admitting the Reports. Opp. 14. It is much more the opposite: the FBI Reports were so highly probative that they had to come in, and a limiting instruction could have cured any minimal attendant prejudice.

7

### III.  DENIAL OF A MITIGATION INSTRUCTION WAS ERROR.

Plaintiff defends the court's refusal to give a mitigation instruction on the facts and the law. She is wrong on both.

*First*, trial evidence would have allowed a jury to conclude that because Plaintiff did not receive the recommended mental health care, she failed to mitigate.  Plaintiff explains (at 16) that a mitigation instruction was not needed because "Carnival never put on a defense expert" and did not cross-examine Plaintiff's expert specifically on mitigation.  But Plaintiff cites no case supporting the proposition that a defendant must put on expert testimony about failure to mitigate. Precedent simply requires that there be evidence in the record, whether expert or lay, supporting an instruction on mitigation.  *See generally* 25A C.J.S. Damages § 418.  Indeed, in *Nord v. U.S. Steel*, 758 F.2d 1462, 1471 (11th Cir. 1985), cited by Plaintiff at 16, the court recognized that a defendant could be entitled to a mitigation instruction by relying only on plaintiff's testimony, although the defendant was not successful in that endeavor in *Nord*.[4]  In short, Carnival needed to show only that there was evidence to support the defense of failure to mitigate.  And there was.

Plaintiff's own expert's testimony established that a psychiatrist recommended that Plaintiff seek treatment, that she did not undergo such treatment, and that such lack of treatment could have harmed her recovery.  Dr. Surloff testified that Plaintiff needed "several years of treatment." [Trial Tr. Day 5 at 142:16–21].  She explained that trending "downhill," as Plaintiff claimed, would be expected of "PTSD patients or people that are not in therapy." [Trial Tr. Day 5 at 56:25-57:5].  And Plaintiff conceded that from December 2018 to December 2019 she did not receive any treatment.  [Trial Tr. Day 5 at 249:23-250:1].

---

[4] Plaintiff also cites *Garcia v. Walmart Stores, Inc.*, 209 F.3d 1170, 1174 (10th Cir. 2000).  Opp. 16.  *Garcia* is not instructive on the issue here; not only is it out of circuit, but the court there affirmed the district court's denial of a mitigation instruction under plain-error review because defendant there had conceded that it failed to timely object to the lack of a mitigation instruction.

8

Trial evidence was thus sufficient for the jury to determine that Plaintiff might have benefitted had she received treatment sooner. *See* Mot. 25-26 (collecting cases applying similar reasoning). Plaintiff counters (at 16-17) with factual reasons for *why* she did not undergo the recommended treatment—but such factual explanations are precisely what the jury could have been told to consider in determining for itself whether Plaintiff failed to mitigate. Because the record supported a failure-to-mitigate finding, Carnival sought an instruction on mitigation to allow the jury to make that determination. But the Court rejected it. That was error.

*Second*, Carnival proposed an instruction that was not misleading and that was a correct statement of the law. Carnival had proposed an instruction that stated in relevant part: "If you should find from a preponderance of the evidence that the Plaintiff failed to seek out or take advantage of an opportunity that was reasonably available . . . ." [ECF 241 at 24]. During a charge conference, as so often occurs, the parties discussed the disputed instructions or portions thereof. Here, that meant there was discussion over the need for a mitigation instruction and whether the "opportunity" language was too broad so as to possibly confuse the jury. The Court told Carnival that it wanted more specific language than "opportunity," to which counsel replied: "Your Honor, I'm talking about a failure to seek recommended medical/psychological care." [ECF 344-6 at 4]. The Court then asked whether Carnival had precedent to support its revised proposal; Carnival subsequently provided case law supporting its proposed instruction that now effectively read "[i]f you should find from a preponderance of the evidence that the Plaintiff failed to seek out or take advantage of *recommended medical/psychological care* that was reasonably available . . . ." The cases Carnival provided supporting such an instruction included *Rubenstein v. Yehuda*, where the Eleventh Circuit stated that "a paradigmatic example" of mitigation is a "fail[ure] to obtain proper

9

medical care" after an accident, which may "lessen [plaintiff's] recovery for the subsequent aggravated condition." 38 F.4th 982, 1000 (11th Cir. 2022).

Plaintiff concedes that Carnival did cite *Rubenstein* to the Court; she apparently takes issue instead with Carnival's failure to "hand[]" the case "to the Court to read in depth," as Carnival had with another case supporting a mitigation instruction. Opp. 21. Carnival is not aware of—nor does Plaintiff cite—any precedent requiring a defendant provide the court with a hard copy. The requirement, rather, is that the proposed instruction be a correct statement of the law. And *Rubenstein* says that "a paradigmatic example" of mitigation is a "fail[ure] to obtain proper medical care" after an accident. 38 F.4th at 1000. Plaintiff even (inadvertently) concedes that the proposed instruction is a correct statement of the law, positing that had Carnival expressly pointed out this "paradigmatic example" then "perhaps this Court would have provided a mitigation instruction." Opp. 20-21. Moreover, courts across the country have held that mitigation applies to *psychological and emotional* damages. Mot. 26. Plaintiff did not respond to these precedents.

In a final odd turn, Plaintiff, again, without citation, differentiates between medical care for physical issues and mental health issues. Opp. 21. But *Rubinstein* did not turn on such a distinction; that court said instead that "a paradigmatic example" of the need for a mitigation instruction is when there was a "fail[ure] to obtain proper medical care." 38 F. 4th at 1000. And courts around the country say mitigation applies to *psychological and emotional* damages. A plaintiff's failure to take adequate steps to treat a condition after injury is therefore a failure to mitigate, regardless of whether that condition is physiological or psychological.

\* \* \*

For the foregoing reasons, and those in Carnival's opening submission, this court should grant Carnival's request for a new trial.